Gene O. Clark v. Commissioner. Faye Clark v. Commissioner. Gene O. Clark and Faye Clark, Husband and Wife v. Commissioner.
Clark v. Commissioner
Docket Nos. 48542-48544.[1]
United States Tax Court
T.C. Memo 1957-129; 1957 Tax Ct. Memo LEXIS 120; 16 T.C.M. (CCH) 555; T.C.M. (RIA) 57129; July 17, 1957
*120 Petitioner Gene O. Clark, president and majority stockholder of Gene Clark, Inc., from April 23, 1946, through March 1, 1949, inclusive, was the dominating factor in conducting and controlling its corporate affairs. The corporation received substantial amounts of taxable income from unrecorded sales which it failed to report on its returns. Petitioner withheld and diverted to his own purposes substantial amounts out of the proceeds of such unreported sales. Held: 1. Petitioners realized unreported income from informal or constructive dividends from Gene Clark, Inc., for the calendar years 1946 and 1947, reportable for income tax purposes on the community property basis. Farm losses determined for 1946 and 1947. Long-term capital gain for 1947 adjusted. Unreported income determined for 1946 and 1947. 2. Petitioners did not understate taxable income in their joint returns for 1948 and 1949. 3. Petitioner Faye Clark's individual income tax returns for 1946 and 1947 were not false and fraudulent with intent to evade taxes. Assessment and collection as to Faye Clark barred by limitations as to the year 1946 but not as to the year 1947, because of omission from gross income in *121 her return for that year of amounts properly includible therein which are in excess of 25 per centum of the amount of gross income stated in said return. 4. Each of the returns of Gene O. Clark for the years 1946 and 1947 was false and fraudulent with intent to evade taxes. 5. A part of the deficiency of Gene O. Clark for each of the years 1946 and 1947 was due to fraud with intent to evade taxes. Additions to tax under section 293(b) of the Internal Revenue Code of 1949 are applied for said years. Thomas A. Baird, Esq., and Alva C. Baird, Esq. *122 , for the petitioners. Sidney Machtinger, Esq., and Earl J. Gardner, Esq., for the respondent. FISHER
Memorandum Findings of Fact and Opinion FISHER, Judge: This consolidated proceeding involves deficiencies in income tax and additions to tax determined against petitioners as follows: Sec. 293(b)
Petitioner
Year
Deficiency
Additions to Tax
Gene O. Clark
1945
$ 803.89
$ 401.95
Gene O. Clark
1946
12,052.82
6,026.41
Gene O. Clark
1947
12,098.71
6,049.36
Faye Clark
1945
823.89
411.95
Faye Clark
1946
12,157.33
6,078.67
Faye Clark
1947
12,252.87
6,126.44
Gene O. Clark and Faye Clark
1948
19,780.57
9,890.29
Gene O. Clark and Faye Clark
1949
7,472.72
3,736.36
Claim to additions to tax with respect to petitioner Faye Clark for the calendar years 1946 and 1947 has been waived by respondent. The parties have stipulated that the year 1945 is not presently in issue and that there will be an overpayment of tax in such year, the amount thereof to be reflected in the Rule 50 computation. The parties also stipulated that petitioners sustained a net operating loss during 1950 in the amount of $4,513.62, and that said *123 amount is properly allowable as a loss carry-back to the year 1949. Other stipulated adjustments between the parties will likewise be reflected in the Rule 50 computation. The principal issues presented for our consideration are: (1) whether petitioners received constructive dividends for any of the years 1946 through 1949, inclusive, from Gene Clark, Inc., which they failed to report on their individual tax returns for 1946 and 1947 and their joint returns for 1948 and 1949, and, if so, in what amounts; (2) whether petitioners realized unreported capital gains for either or both of the years 1948 and 1949; (3) whether any part of the several deficiencies determined for each of the taxable years in issue was due to fraud with intent to evade tax; (4) whether assessment and collection of any of the deficiencies determined against Gene or Faye Clark for 1946 and 1947 are barred by the statute of limitations, and (5) whether petitioners sustained unallowed farm losses for the taxable years 1946 and 1947. General Findings of Fact The facts are partly stipulated and to the extent so stipulated are incorporated herein by reference. Petitioners, Gene O. and Faye Clark, are husband *124 and wife, and during the calendar years 1946, 1947 and 1948 resided in Los Angeles County, California. In March 1949, they moved to Independence, Kansas, and for the remainder of the year were residents of Kansas. All income derived by petitioners during the years 1946 to 1948, inclusive, was community income. For the calendar years 1946 and 1947, they filed separate income tax returns on the community property basis and for the calendar year 1948, they filed a joint return with the collector of internal revenue of Los Angeles, California. For the year 1949, they filed a joint income tax return with the collector of internal revenue for the district of Wichita, Kansas. Prior to April 23, 1946, Gene O. Clark (hereinafter sometimes called petitioner) and Archie Koyl were associated in a business venture known as Gene Clark Plumbing Co. (hereinafter sometimes referred to as the Plumbing Co.), consisting of two shops, located in El Monte and Bell Gardens, California, and having a labor force of approximately 35 employees. The Plumbing Co. was engaged primarily in selling plumbing supplies and rendering plumbing services to building contractors. No certificate for doing business under *125 a fictitious name was filed on behalf of Plumbing Co. to show that it was a partnership. Petitioner and Archie Koyl organized a California corporation, Gene O. Clark, Inc., now known as Atlas Pipe and Supply Company (hereinafter sometimes called the corporation), on April 23, 1946, [2] to engage in the wholesale plumbing business. Of the 522 shares of $100 par value stock authorized, 364 shares were issued to petitioner, president of the corporation, and 157 shares to Archie M. Koyl, vice president. One qualifying share was issued to another individual who is not involved herein. Petitioner acquired his shares at a cost of $36,500. Petitioner's shares represented an ownership interest in said corporation of approximately 70 per cent. On or about March 29, 1948, petitioner purchased the 157 shares of stock owned by Koyl for $24,714.49. The sale of Koyl's interest therein was consummated by a document designated "Assumption of Obligation," dated March 29, 1948, filed as petitioners' Exhibit 29 and incorporated herein *126 by reference. Thereafter, in December 1948, Clark informed Koyl that he desired to sell out his entire interest in Gene Clark, Inc., to Koyl. On or about March 1, 1949, Clark sold all of his stock to the Koyls, 262 shares to Archie and 260 shares to Fawn, a total of 522 shares. During the fiscal years ended April 30, 1947, to 1950, inclusive, the proportional stock ownership in Gene Clark, Inc., is summarized as follows: Date
Clark
Koyl
April 23, 1946 to March 31,
1948
70%
30%
March 31, 1948 to March 1,
1949
100%
March 1, 1949 to April 30,
1950
100% [3]
Gene Clark, Inc., commenced its business operations on or about April 23, 1946, occupying the same premises as the Plumbing Co. Within a few months after the formation of the corporation, the inventory of the Plumbing Co. and that of the corporation were commingled and were thereafter kept as a single unit. The only employees on the business premises were those of the corporation. No records were kept that could properly reflect business transactions of any plumbing enterprise other than the corporation. The only book kept in the office that had any connection *127 with Plumbing Co. was a check book on the Bank of America in El Monte. No Federal tax returns were filed on behalf of Plumbing Co. for any period after April 23, 1946. Plumbing Co. existed, however, for an indeterminate period after the organization of the corporation, solely for the purpose of buying and selling plumbing materials in violation of the then existent regulations of the Office of Price Administration (O.P.A.). This was done because Plumbing Co. did not hold any license to do business which could be forfeited if it were found guilty of violating O.P.A. regulations. Plumbing Co. was to serve as a front in such transactions for the corporation which did hold a license to do business. The corporation kept its books on an accrual method and reported its income on a fiscal year basis beginning with the year ending April 30, 1947. After incorporation of the plumbing enterprise, customers would frequently make out checks to Gene Clark, to the corporation or to Plumbing Co. To obviate the resultant confusion, the corporation adopted a rubber stamp showing all three designations in order that it might properly endorse any check. This composite stamp was used throughout the *128 period here in question. During each of the taxable years in which Clark was an officer and stockholder of Gene Clark, Inc., substantial but undisclosed and undetermined amounts of receipts from sales made by the corporation were neither recorded on its books nor reported on its income tax returns. During the fiscal years involved herein, the net income of Gene Clark, Inc., reported on its returns (the tax liability of which is material here because of its reflection upon the issues involving petitioners) the total additions to its net income as found by the revenue agent, and its total net income as so found are as follows: [4]
Additions to
Total Net
Net Income
Income Per
Per Revenue
Revenue
Net Income
Agent's
Agent's
Year
Per Returns
Report
Report
1947
$30,632.10
$102,050.17
$132,682.27
1948
16,726.40
92,208.62
108,935.02
1949
(4,154.03)
46,575.16
42,421.16
*129 Joint Exhibits 3-C, 1-A, and 2-B, being, respectively, the revenue agent's reports on Gene Clark, Inc., for the fiscal years ending April 30, 1947-1949, inclusive; the petitioners' separate returns for 1945, 1946 and 1947; and petitioners' joint returns for 1948 and 1949, are incorporated herein by reference. Up to March 1, 1949, (when he sold out his entire interest to the Koyls), petitioner was in general control of the over-all corporate operations and dictated its financial policies. Clark was in full charge of the main office in El Monte. Archie Koyl directed the activities at the shop in Bell Gardens. Virtually all other corporate activities, including the maintenance of corporate records and the disposition of receipts, were under the direct control of petitioner. Fred Files, comptroller and office manager of the corporation, worked under the immediate supervision and direction of petitioner. Files' duties consisted primarily of handling receipts and keeping proper office records. He worked at both shops, keeping one set of books for the entire operation, though consecutively numbered duplicate receipt books were maintained in both shops. When cash was received from a *130 customer, the amount thereof was recorded in the receipt book which was, in substance, merely a memorandum that was later transferred to the "cash receipts" journal in the books of account. Cash sales were sometimes totalled daily and sometimes only several times a week. A single "cash receipt" figure was usually recorded in the journal for the total amount of the separate sales. Deposits of the total cash receipts were made in the corporation's bank account and generally recorded weekly in the cash receipts journal. Files, who handled all of the bank deposits of the corporation, regularly deposited all cash receipts of the corporation which were turned over to him for such purpose by Gene Clark. On a number of occasions, however, Gene instructed Files to set aside the cash proceeds from certain sales and to turn such funds over to him without recording the sales on the books. Also, at different times, petitioner would give Files checks made out to the corporation by customers for sales, which sales were unrecorded on the corporate books, in exchange for the cash taken by petitioner. An undetermined part of such cash proceeds were used by the officer-stockholder to cash checks as an *131 accommodation for neighborhood stores and workmen in relatively small sums ranging up to $100. There was a substantial but undetermined difference in the amount of cash Files recorded in corporate books or deposited in its bank accounts and the amount of cash sales actually made by the corporation. The aforementioned method of handling cash sales was also the general practice of Plumbing Co. and was not altered by the coming into existence of the corporation during the entire taxable period involved herein. Between May 1946 and December 1946, petitioner, on behalf of the corporation, frequently sold and shipped plumbing materials from the El Monte yard without any entry being made for the transactions in the corporate records. Some of such shipments represented "trading transactions" or non-profit exchanges of materials with competitors for mutual convenience. Subsequent to December 1946, petitioner frequently sold and traded plumbing equipment on behalf of the corporation. He also sold and traded used vehicles. Files was not supplied with the appropriate sales slips and proceeds on many of these transactions. Sometimes Clark would simply give the comptroller a check, without adequate *132 details connected with the sale, and instruct him to remove the particular asset from the corporate books. During 1947, when maximum ceiling price regulations on plumbing supplies were in effect under the Office of Price Administration, Clark engaged in black market activities. When he dealt in such illicit activities, petitioner would generally pay an undisclosed amount of cash for the purchase of materials over the price indicated on the invoice. These cash funds were taken from unreported corporate receipts. The over-ceiling cash payment was not recorded on the corporate books as part of the total cost of the illicit purchases. Neither petitioner, Plumbing Co., nor the corporation reported the profits from such illegal sales transactions. During each of the taxable years in question, petitioner also had an arrangement with Keenan Pipe and Supply Co. whereby he was able to purchase materials on behalf of the corporation at one-third off for cash. Under this arrangement, indeterminate amounts of such purchases were made and paid for (usually with receipts obtained from unreported corporate sales), the parties agreeing not to keep any records of their cash transactions. Apart *133 from the foregoing modus operandi during each of the years involved herein, Gene Clark, Inc., made numerous purchases of plumbing materials in the normal course of business which were not recorded on the corporate books, but the subsequent sales thereof were likewise unrecorded. Also, in many instances, the profits from such sales were neither reported by the corporation on its income tax returns nor by petitioners on their returns for the years in issue. The corporation also rendered plumbing services for building contractors on a number of housing projects during the years in question, and petitioner failed to record the full receipts therefor on its books. Y. L. Creed Transaction Between December 1945 and March 1946, Gene Clark performed extensive plumbing work for Y. L. Creed, a general contractor, on four houses being constructed in Maywood, California. Creed agreed to pay a total of $2,922.50 for such services, of which the first payment was made by a check in the sum of $544, on February 5, 1946. The same day, the check for $544 was deposited to the account of Gene Clark Plumbing Co., and recorded in the sales of that company. The remaining $2,378.50 was credited to petitioner *134 by Creed in June 1946, on account of the purchase price of a house (5957 Otis Avenue, Maywood, California) which petitioner purchased from him for a total consideration of $8,500. The balance of the purchase price was represented by a trust deed made out in favor of Creed and a cash payment of $1,400 placed in escrow by Clark. The credit of $2,378.50 was not reported on the income tax return of Gene Clark or Gene Clark, Inc. The Plumbing Co. filed no return for this period. See further Findings infra, paragraph (3) under heading "Matters Relating to Earnings and Profits Available for Distribution." Unreported Transactions - Gene Clark, Inc. On October 5, 1946, Gene Clark, Inc., and Truman Johnson, a building contractor, executed a contract under which the corporation was to supply plumbing materials and services to Johnson on 10 new houses in West Covina, California. The contract price set forth in the written contract was $3,300, but the actual price was $9,300. (On January 22, 1947, the parties executed another contract for similar services on a housing project, consisting of 40 houses being build in West Covina at a cost of $930 per house or a total of $37,200.) About the same *135 time it rendered these plumbing services to Johnson, Gene Clark, Inc., purchased a house from him for a total price of $22,000. The price per unit of the 10 houses to be serviced under the October 5, 1946, contract was $930 per house. The difference of $6,000 between the written contract price of $3,300 and the actual (though unexpressed) contract price of $9,300 represented part payment on the house which the corporation purchased from Johnson. The corporation was credited by Johnson with the difference of $6,000 on the purchase of the house in 1946. Likewise, Johnson's books reflected the full cost of the materials and services furnished, including the $6,000 in question. The transaction was handled in the foregoing manner at the request of petitioner. The $6,000 credit was neither recorded on the books of Gene Clark, Inc., nor reported on the corporate income tax returns for any year involved herein. In September 1947, the corporation sold the house to Clark at an amount which was about $3,137.90 less than the actual cost. The amount of the selling price to Clark was set up as an account receivable on the books of the corporation. In the year 1947, the following amounts were received *136 by Gene Clark, Inc., from Hamilton Homes, Inc., for plumbing material and services, which were not included in the sales of Gene Clark, Inc.: Date
Amount
9/10/47
$1,221.00
9/16/47
2,295.00
7/ 9/47
2,170.00
A receipt for $8,241.42 dated September 16, 1947, was issued to Gene Clark with the notation "Payment in full for Equity in House at 1825 Vine," and the amount thereof was credited to Gene on the "Accounts Receivable - Officers" account of Gene Clark, Inc., by entry dated September 30, 1947. On September 16, 1947, (the same day the receipt for $8,241.42 was issued to petitioner), the corporation made a bank deposit in its commercial bank account at Citizens National Bank of Maywood, California, in the amount of $21,180.51, which included, in addition to an undisclosed amount of cash, two of the three checks (in the respective amounts of $1,221 and $2,295) representing unrecorded sales received from Hamilton Homes, Inc. The third check for $2,170 was deposited by the corporation on July 30, 1947, as part of a deposit in the amount of $10,016.46. The three checks from Hamilton Homes, Inc., were substituted for other receipts from sales recorded on the corporate *137 books but not deposited. Gene Clark, Inc., received a check dated September 15, 1947, in the amount of $1,000 from H. K. Niles, which was not reported in the corporate books as a sale, but was included in the corporation's bank deposit of September 16, 1947, mentioned above, in the amount of $21,180.51. This check was likewise an item substituted for other sales recorded on the books but not deposited. The following checks were also received by petitioner on behalf of the corporation for materials and plumbing services: Payable to
Amount
Date
Payor
Gene Clark
$2,294.50
1/14/48
Allen T. Mitchell & Son
Gene Clark Plumbing Co.
1,158.44
2/10/48
A. & F. Plumbing & Heating Co.
Gene Clark (endorsed "Gene Clark")
1,558.44
4/20/48
Ben Lang
It was stipulated that the above amounts were not entered on the books and records of the corporation as sales, nor were they reported for tax purposes on the income tax returns of the corporation or of the petitioners for the years in issue. It was likewise stipulated that during 1948, petitioner received the following amounts, totalling $38,009.74, from Lloyd H. Meissenburg, of George A. Meissenburg (Valley *138 Boulevard Plumbing & Electric Co.), plumbing contractors, for plumbing materials, which amounts also were not recorded in the corporate records or reported on the income tax returns of either Gene Clark, Inc., or the petitioners for any of the years involved herein: Method of Payment
Date
Amount
Payable to
Endorsed by
Check
2/ 9/48
$22,935.00
Gene Clark
Gene Clark
Check
1/29/48
3,074.74
Gene Clark
Gene Clark
Cash
3/ 2/48
12,000.00 Of the total of $38,009.74 received as above noted, Clark retained approximately 70 per cent and gave Koyl approximately 30 per cent. A check in the amount of $1,700, received by the corporation (made payable to Gene Clark) in payment for one of its vehicles, was drawn by Walter A. Story on February 12, 1948. There is no evidence in the record that the check was entered on the books of the company. On March 4, 1948, petitioner received a check in the amount of $6,670 from the Southern California Investment Company for rough plumbing (on some 23 houses at $290 per unit) payable to Gene Clark, Inc. The check for $6,670 was endorsed "Gene Clark, Inc., Gene Clark" and cashed March 19, 1948. A cashier's check in *139 the amount of $6,670 payable to Gene Clark, Inc., was acquired the same date and was deposited March 31, 1948, in the commercial bank account of Gene Clark, Inc., at Citizens National Bank, Maywood, as part of an over-all deposit of $12,816.85. The receipt of the $6,670 was not recorded as a sale in the records of Gene Clark, Inc., nor was it reported as income by either the corporation or petitioners. The deposit of the cashier's check of $6,670 was in substitution for other receipts recorded on the books of Gene Clark, Inc., but not deposited in the corporation's bank account. On March 20, 1948, the day after the cashier's check was acquired, Gene Clark, Inc., received a total amount of $6,610 in cash from the following four separate transactions, for each of which the corporation comptroller issued a cash receipt. The corporation received $1,250 in cash from the sale of a 1947 Chevrolet truck. The transaction was reported in the corporation's return for fiscal year 1948 as a sale of assets. The amount of $1,473.93 in cash was also received from Story and Sons and that sum was credited to their account on the books of the corporation. Likewise, the corporation received the sum *140 of $2,099.91 from Las Vegas Supply Co. for the sale of certain miscellaneous assets which was credited on the corporation books. The amount of $1,786.16 was received from Clark and credited to him in the "Accounts Receivable - Officers" account. There is no evidence that the cash items totalling $6,610 were deposited in the corporation's bank account as a part of the deposit of March 31, 1948, or at any other time. Gene Clark, Inc., constructed a swimming pool at LaJolla, California, for James M. Young, Jr., and received the following checks: Date
Amount
10/30/47
$1,672.75
11/26/47
1,672.75
11/ 6/47
1,672.75
1/24/48
1,902.73 The first three checks listed above were credited to the account receivable ledger card of James M. Young. It was conceded on brief that the last check in the amount of $1,902.73, endorsed by petitioner, was neither recorded on the books of the corporation, deposited in its bank account, nor reported as income on its tax return for fiscal 1948. Petitioner, on behalf of Gene Clark, Inc., received the following checks for plumbing material sold by the corporation to the Valley Cities Supply Co.: Date
Payable to
Endorsed by
Amount
9/20/47
Gene Clark
Gene Clark, Archie Koyl
$2,731.54
6/10/48
Gene Clark
Gene Clark
1,147.00
7/21/48
Gene O. Clark
Gene O. Clark
5,000.00
8/17/48
Gene O. Clark
Gene Clark
3,000.00
11/ 8/48
Gene O. Clark
Gene Clark
2,000.00
1/24/49
Gene O. Clark
Gene Clark, Archie Koyl
1,795.55
*141 It was stipulated that the above checks were neither entered on the books of Gene Clark, Inc., as sales, nor reported for tax purposes on either the income tax returns of the corporation or of petitioners for the years in question. "Accounts Receivable - Officers," Farm Purchases During 1946, Gene Clark took a trip to Kansas to examine some farm land, intending to purchase it for the corporation to own and operate. After locating a farm known as North Farm, in Montgomery County, Kansas, he purchased it for total price of $40,000, making a down payment of $10,000 which he borrowed from the Valley Cities Supply Co. When the directors of Gene Clark, Inc., were advised that the corporation was not permitted to own such land in Kansas, they rejected the proposed purchase of North Farm. Petitioner then decided to purchase the farm land in his own name, using corporate funds as part of the consideration. As part of his financial arrangements relating thereto, petitioner, on July 31, 1946, had set up account #110 on the corporate books designated as "Notes Receivable" and an entry was made indicating a loan of $10,000 had been extended to Clark and Koyl. Thereafter extensive withdrawals *142 were debited to the account in 1946 in relation to the farm purchases, and will be referred to infra. These withdrawals were made by Clark without provision for promissory notes, security or interest. There are two credit items in 1946, which as explained by journal entry, merely reflect a transfer to another account (Outside Investment - West Covina Property). There is a debit in 1947 to Valley Cities Supply Co. which is balanced by a credit within a month. There is also a debit of $1,591.83 dated February 28, 1947, which is unexplained. None of the credits purport to be cash payments by Clark (or Koyl) except the $20,000 item of April 30, 1948, in the so-called trust deeds account which was a spurious credit. The circumstances surrounding it and the use of the "Trust Deeds" as the title of the account are set forth infra in our Findings. Originally, when it was decided that the corporation would own and operate North Farm, the board of directors had opened an account with the Citizens National Bank of Los Angeles, California, designated "Special Account No. 1," in the amount of $5,000. However, after it was learned that the corporation could not operate the farms, on December 31, 1946, the *143 $5,000 deposit in said account was transferred to the "Notes Receivable - Officers" account as a debit to Clark's individual account. Soon after the purchase of North Farm, Koyl indicated that he would like to own a farm. Petitioner thereupon bought another farm in Kansas for Koyl, known as South Farm, consisting of about 350 acres. As part of the purchase price therefor, Clark obtained approximately $10,000 by selling plumbing materials belonging to the corporation. In addition, on August 31, 1946, a charge to the "Notes Receivable - Officers" account was made in the amount of $11,406.80, and again on October 31, 1946, another charge of $12,420.66 was made in connection with the purchase of the farms. As of May 1, 1947, the "Notes Receivable" account shows debit balances of $25,304.50 for Clark and $10,844.79 for Koyl, totalling $36,149.29. Said balances were in direct proportion to their respective shareholdings in the corporation. Some time before May 1, 1947, the designation of the "Notes Receivable - Officers" account on the general ledger was scratched out (for some unexplained reason) and changed to "Trust Deeds." A schedule denominated "Notes Receivable - Officers," attached *144 to the corporation's return for fiscal year 1947, states, inter alia, that after it was learned that North Farm in Kansas could not be purchased by Gene Clark, Inc., the corporation extended a loan to the officers and "authorized the Officers to purchase this land in their names. The corporation received in return Trust Deeds and Signed Notes as security until such time as the land can be profitably sold." At no time while Clark was affiliated with the corporation did it own any trust deeds, and except for the erroneous heading of the account, the corporate books do not reflect such ownership. In 1948, petitioners purchased two other farms in Kansas for a total price of $70,000, and for such purpose borrowed $28,000 from the Independence Bank in Kansas on February 5, 1948, payable in five years. The loan was repaid September 26, 1950. In March 1949, title to South Farm, owned by Koyl, was transferred to Clark. Pursuant to the specific instructions of petitioner, the comptroller sometimes made entries in the corporate books which did not reflect the true facts or amounts involved in the particular transactions being recorded. Thus, during 1948, when Gene Clark, Inc., declared *145 its first and only formal dividend, petitioner received a dividend check in the amount of approximately $20,000 (to be exact $19,996.17). Petitioner reported the receipt of the dividend on his joint return for 1948. On April 30, 1948, after Clark received the dividend check, his "Notes Receivable - Officers" account was credited with $20,000. Petitioner, however, did not turn back the dividend check to the corporation as a credit toward said account. Instead, Clark turned over to the corporation comptroller customers' checks, substantial in amount, totalling about $20,000, with instructions to credit said account. Matters Relating to Earnings and Profits Available for Distribution The deficiencies in the instant case were predicated upon the computations contained in an exhaustive report prepared by respondent's agent during the investigation of the income tax liability of Gene Clark, Inc., for the fiscal years 1947 through 1950, inclusive, the report being admitted in evidence by stipulation of the parties to show the basis of respondent's determination. Corporate net income and tax liability were computed largely upon the bank deposit method, gross receipts being determined *146 primarily on the basis of unreported sales and deposits in the various bank accounts of the corporation. Also, numerous deductions reported by the corporation on its returns as ordinary and necessary business expenses were disallowed. Respondent, being unable to ascertain with exactitude the amounts of diverted funds attributable to Clark and Koyl, respectively, during the years in issue, allocated such diversions on the basis of their respective stock ownership in said corporation, 70 per cent of the unreported corporate funds being attributed as informal or constructive dividends to petitioners. The manner in which respondent determined those amounts ultimately attributed to the officer-stockholders as informal dividends for each of the years in question was to first ascertain the earnings and profits of the corporation, as indicated above, and then to adjust this figure for so-called "unavailable" items, thus arriving at the amount "actually" available for distribution as constructive dividends. Many items included in the revenue agent's report were admitted by counsel for petitioner to be correct at the time the report was submitted in evidence and in part are set forth in *147 detail above in our Findings relating to unreported transactions. A number of other items connected with the unreported sales of the corporation were contested by petitioner, either at the trial or on brief. Our Findings of Fact with respect to those items relating to earnings available for distribution which are in dispute (except for items disposed of in our Opinion, infra, because of failure of petitioner to sustain the burden of proof and items already fully covered in our Findings) are as follows: (1) Corporate earnings per return. The net income per return of the corporation, as set forth hereinbefore, is properly includible in computing earnings available for distribution as dividends for each of the taxable years in controversy. (2) Substitutions. As aforementioned, during the years 1946 through 1949, inclusive, substantial amounts of receipts from sales were neither recorded on the books of Gene Clark, Inc., nor reported in its income tax returns. In some instances, no part of the particular sales was recorded or reported. In others, less than the full amount was recorded or reported. One device used was referred to in the testimony as "substituted" sales. The device *148 operated substantially as follows: Cash sales would be made and recorded on the books. Other sales totalling a like amount would be made, for which checks were received in payment, which were not recorded on the books. The proceeds of the latter sales, though not recorded, would be deposited, but the recorded cash sales would not be deposited. As a result, the deposit would equal the recorded sales, but an equal amount of sales would be unrecorded and unreported. Petitioner also cashed checks as an accommodation for neighborhood stores and workmen in relatively small sums ranging up to $100, and an undisclosed number of such checks were deposited in the various corporate bank accounts. Apart from such "accommodation" checks, the aforementioned checks, representing unreported sales, were "substituted" for the "cash receipts" and deposited in corporate bank accounts, and are includible in corporate gross income. We have reduced the amount of the substituted items on the basis discussed infra in our Opinion. The amounts reflected in the revenue agent's report, and the amounts as adjusted by us are as follows: Amount
Amount as
Fiscal Year
Per Report
Adjusted
1947
$14,806.77
$13,326.10
1948
35,419.36
30,892.36
1949
8,074.79
7,267.31
*149 (3) Creed credit allowance. As noted above, between December 1945 and March 1946, petitioner performed plumbing work for Y. L. Creed, a general contractor, on several houses. Creed paid a total of $2,922.50 therefor, of which the first payment was paid to the Plumbing Co., in the sum of $544 on February 5, 1946. The balance of $2,378.50 was credited to petitioner by Creed in June of 1946, at which time Clark purchased a house from him for a total consideration of $8,500. The balance or credit of $2,378.50 was not reported on the books of the corporation, or on the income tax returns of either the corporation or petitioners for any of the years in question. There is no evidence that Koyl received any benefit from this credit. In reconstructing corporate income for fiscal 1947, the revenue agent included as an unreported balance due from Creed the amount of $3,058.50. The amount of $3,058.50 was not income of the corporation, and we have eliminated it from corporate income. The credit, of $2,378.50 was income to Clark and his wife on the community property basis and one-half of that amount is attributable to Clark for 1946. (4) Truman Johnson credit allowance. During 1946 Gene *150 Clark, Inc., purchased a house from Truman Johnson, a customer of the corporation, for a total price of $22,000, and received a credit allowance of $6,000 on the purchase price. The $6,000 credit was not recorded on the books of Gene Clark, Inc., or reported on the corporate income tax returns for any year involved herein. See Findings of Fact, supra. (5) "Notes Receivable - Officers". As aforementioned, during the entire period in question the two officer-stockholders of the corporation maintained individual open accounts on the corporate books in the "Notes Receivable - Officers" account, to which extensive withdrawals were charged and partial repayments were credited. See Findings of Fact, supra. The net withdrawals in the amount of $36,149.29 from Gene Clark, Inc., as of May 1, 1947, constituted, in reality, disguised dividend distributions rather than loans to the officers during the taxable years involved herein. (6) Income - deferred sales. During each of the taxable years in question the corporation entered into contracts with building contractors for the installation of plumbing and received a percentage of the total contract price as the work progressed. When the *151 rough plumbing was installed, the corporation collected 80 percent of the total contract price from the contractors, of which 30 per cent was carried on the corporate books as deferred income until the contract was completed. In a schedule attached to its Federal income tax return for fiscal 1947, the corporation explained the account as follows: "DEFERRED INCOME - ADVANCE ON CONTRACT SALES: "This account is based on plumbing contracts not completed. On the installation of rough plumbing, fifty percent of full contract price is set up as income, in as much as half of the contract terms have been completed. However, after installation of rough plumbing, eighty percent of full contract price is collected from customer as per terms of the contract. (50% complete - 80% collected). This additional thirty percent collected from the customer at this period of the contract is carried on the books of Gene Clark Incorporated as deferred income until the contract has been completed. After the installation of finish pluming has been completed, the remaining fifty percent of contract price is set up as income and the remaining twenty percent of contract price is collected from customer. This *152 procedure of accounting has been consistently maintained by Gene Clark Incorporated in order not to overstate income in relation to cost of sales of each contract. At the installation of rough plumbing, it is established that the cost of the contract at this period, consisting mainly of labor, is on the average, fifty percent of contract cost. Whereas, the cost of the contract on installation of finish plumbing consists mainly of materials, also established to be on the average fifty percent of contract cost." The so-called deferred income for fiscal 1947 disclosed in the return, but not included in gross income, was in the amount of $49,210.15. The revenue agent included the amount in adjustments to corporate income for fiscal 1947 but excluded it from earnings available for distribution in that year, and included it in available earnings for fiscal 1948. (7) Pacific Pump, Inc. During fiscal 1948, Gene Clark, Inc., received a check from Pacific Pump, Inc., (of which E. J. Weiss was president) for plumbing supplies in the amount of $1,094.52. The check was included in corporate sales for 1948, but was improperly designated in the journal ledger as having been received from E. *153 J. Weiss. In reconstructing corporate income for fiscal 1948, the revenue agent erroneously included the check as an unreported sale to Pacific Pump, Inc. (8) Bad debts. On its tax return for fiscal year 1947, the corporation deducted as bad debts the sum of $4,874.51 from its gross income. Of said amount, $3,703.50 was disallowed in fiscal 1947 (no identifiable event establishing worthlessness having been proven by the corporation), and was included as "disallowed bad debts" in adjustments to corporate income for that year. The same sum of $3,703.50 was then deducted by the revenue agent from total corporate net income available for distribution during fiscal 1947, on the theory that said amount was not actually available for distribution as dividends for that year. During fiscal year 1948, the corporation recovered $3,216.90 of the above bad debt, and reported said amount on its return. In view of the disallowance of $3,703.50 as a bad debt deduction for fiscal 1947, the amount recovered ($3,216.90), together with bad debt deductions allowed by the revenue agent for fiscal year 1948 in the amount of $1,569.40, (the total of the two items being $4,786.30) were excluded from net *154 income for fiscal 1948 as "nontaxable income and additional deductions." The amount of $4,786.30 was then added back to corporate earnings available for distribution during fiscal year 1948. Facts Relating to Farm Expenditures for 1946 and 1947 In July 1946, after the corporate directors decided not to purchase North Farm, Clark purchased the farm for himself and planted some 300 acres of wheat thereon, which was expected to mature in the spring of 1947. His father, Clyde R. Clark, managed the farm for petitioners. Because of flood conditions in the area which destroyed the crop, there was no income from the farm operations in 1946 and 1947. No deductions for farm losses incident to the operations of North Farm were claimed on petitioners' individual tax returns for 1946 and 1947. The corporation maintained a special account in the Citizens National Bank of Los Angeles (Maywood), California, in the amount of $5,000 (which was set up on the corporate books on December 31, 1946, as an account receivable from petitioner), and which was used by petitioner's father in Kansas to pay certain operating expenses of the North Farm owned by Clark and also the South Farm owned by Koyl. *155 During 1946 the following checks were drawn on Gene Clark, Inc.'s "Special Account No. 1" and signed by Clyde R. Clark: Date
Amount
Payable to
Item
Oct. 17, 1946
$274.95
J. W. Griffith
Seed wheat - North Farm
Oct. 17, 1946
102.15
Lewis Griffith
Seed wheat
Nov. 2, 1946
21.00
North End Service Station
Gas and oil
Nov. 9, 1946
195.57
W. A. Thompson
Seed wheat and oats - South Farm
Dec. 6, 1946
590.36
A. M. Eckelberry Co.
Taxes on both farms
Dec. 6, 1946
36.50
Clyde R. Clark
Repairing fences on South Farm
In addition to the above expenditures, between November 8, 1946, and December 13, 1946, salary checks in the total amount of $950 were drawn on the special account payable to Clyde R. Clark. Of the foregoing items, we find that the following were ordinary and necessary business expenses of operation of the North Farm for 1946: Seed wheat
$274.95
Taxes
223.24
Salary
475.00
Total - 1946
$973.19
During the calendar year 1947, Clyde R. Clark drew $85 from the special account payable to E. Pincher for overhauling a truck. The check does not show that it was for the North Farm. Clyde R. Clark also drew $200 as salary *156 from the special account in 1947. On December 3, 1947, Gene paid taxes on his North Farm in the amount of $223.24. For the calendar year 1947, the following were ordinary and necessary business expenses for the operation of North Farm: Salary $100; taxes $223.24. The parties stipulated that petitioners sustained losses on their farm operations in Kansas during the taxable years 1948 and 1949 in the amounts of $17,233.05 and $17,060.52, respectively, and that said losses will be reflected in the Rule 50 computation. Adjusted Basis - Partial Liquidating Dividend In his statutory notice for 1948, respondent determined that petitioner received a partial liquidating dividend from Gene Clark, Inc., in the amount of $65,095.94 during that year. For our reduction of this amount, see our Opinion, infra. In this connection, respondent determined that the adjusted basis of petitioner's 522 shares of stock in the corporation was $52,100. The parties have stipulated that the basis of petitioner's 522 shares was $61,214.49. Ultimate Findings - Limitations and Fraud With respect to calendar years 1945 through 1949, inclusive, the statutory notice was mailed to petitioners on February 20, 1953. No *157 agreement extending the statute of limitations on assessment or collection was entered into between the parties for the taxable years 1945, 1946, or 1947. With reference to the taxable years 1948 and 1949, the parties have stipulated that the statute of limitations is not an issue. Each of the returns of Gene Clark for the years 1946 and 1947 was false and fraudulent with intent to evade tax within the meaning of section 276(a) of the Internal Revenue Code of 1939. A part of the deficiency of Gene Clark for each of the years 1946 and 1947 was due to fraud with intent to evade tax within the meaning of section 293(b). Faye Clark filed her individual Federal income tax return for the calendar year 1946 on March 15, 1947, reporting thereon gross income in the amount of $14,651.66. She filed her return for the taxable year 1947 on March 15, 1948, and reported gross income in the amount of $9,130.51. The notice of deficiency for the years 1946 and 1947 was mailed to her on February 20, 1953. Respondent concedes that her returns for 1946 and 1947 were not false or fraudulent with intent to evade taxes. Faye Clark omitted from gross income in her return for 1947 an amount properly includible *158 therein which is in excess of 25 per cent of the amount of gross income stated in her 1947 return. Opinion I. Burden of Proof - Deficiencies We discuss the burden of proof as to deficiencies at this point to avoid repetition as we progress. The burden of proof rests with petitioner to show error in respondent's determination of deficiencies. In American Pipe & Steel Corporation v. Commissioner, 243 Fed. (2d) 125, (C.A. 9, 1957) affirming this Court' s Opinion at 25 T.C. 351, the Court of Appeals said, in part: "Petitioner having invoked the jurisdiction of the Tax Court, entered the hearing with the duty of establishing by at least a preponderance of the evidence that the determination made by the Commissioner was erroneous." By stipulation of the parties, the revenue agent's report was received in evidence for the purpose of showing the basis of respondent's determination, but not as proof of the facts therein set forth. Petitioner's approach to the case is an attack on many of the adjustments made in the report. Respondent, for the most part, argues *159 in favor of the adjustments made by the agent (reflected in the ultimate determination) but in some respects disagrees therewith on brief, as will appear from our discussion, infra. The issues are crystalized by the contentions of the parties centering around the report, or are otherwise apparent in the record. Our own practical approach to a resolution of the issues presented is to consider those items of the report with respect to which one or another of the parties expressly disagrees, together with those which evolve upon a consideration of the record as a whole. The remaining items, with respect to which petitioner has failed to point to error, and has not met his burden of proof will be reflected in our ultimate determinations, but will not be separately or specifically considered. As it is, our Opinion is protracted to unusual length because of the many issues actually in dispute, the numerous accounting details involved, and the complexity of reconciling and applying the various conclusions we have reached. II. Understatement of Income - 1946 For the year 1946, we are concerned only with the tax liability of Gene Clark, since assessment and collection for that year *160 are barred by the statute of limitations as to Faye Clark. The respondent, in his statutory notice of deficiency, determined that Clark had failed to report informal dividends received from Gene Clark, Inc., in the amount of $44,227.13. His approach in making this determination was first to calculate the earnings of the corporation for the fiscal year ending April 30, 1947. He attributed 70 per cent of this amount to Clark as the owner of 70 per cent of the stock of said corporation. Petitioner's return was filed on a calendar year basis. Respondent attributed 84.259 per cent of Clark's share to calendar year 1946, (see discussion infra) and divided the amount thereof equally between Gene and Faye Clark, who filed separate returns for 1946 on a community property basis. As already stated, the burden of proof of error is upon petitioner. Petitioner, however, citing Helvering v. Taylor, 293 U.S. 507 (1935) contends that respondent's determination is arbitrary and excessive and therefore must fall in its entirety. In support of this view, petitioner urges that the amount of corporate earnings actually received by Clark in money or property was not established, and that *161 the allocation to calendar 1946 of part of the net earnings of the company for fiscal 1947 available for distribution was without rational foundation. In Greenwood v. Commissioner, 134 Fed. (2d) 915 (C.A. 9, 1943) affirming this Court's decision in 46 B.T.A. 832, the Court of Appeals said (p. 919): "Unquestionably the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid ( Helvering v. Taylor, 1935, 293 U.S. 507, 515 * * *), which burden is sustained by a clear showing that the determination was arbitrary or erroneous." Later (p. 922) the Court said: "Petitioner has failed to overcome the presumption of validity attaching to the determination of the Commissioner, * * *." We think it apparent that petitioner's view is unacceptable. It is manifest from the evidence that substantial amounts of income of the corporation were unrecorded on its books and unreported for tax purposes by the corporation. Respondent had ample reason to infer that such money and property were retained for personal use by Clark or Koyl or both. The respondent had no means of ascertaining the precise amounts involved or the *162 exact amounts withheld by Clark or Koyl because of the very fact that no records were kept and that the transactions were purposefully concealed. It is clear from the record that Clark was the chief perpetrator of the various schemes calculated to siphon off corporate earnings and was well aware of what was going on. In the circumstances of this case, where petitioner admittedly withheld large sums of corporate earnings, it was reasonable for respondent to infer that Clark had seen to it that he retained his share in some approximate relationship to stockholdings. Obviously, petitioner's difficulty is of his own making in failing to keep records of amounts admittedly extracted from corporate funds, regardless of the asserted purpose of the withdrawals. In the absence of records, the respondent was obliged to resort to some reasonably effective technique for the determination of income, and petitioner cannot, by devising such concealment, deprive respondent of the right to use a practical method of making his determination, which he is forced to adopt because of such concealment. We believe the methods adopted by him and the results reached were not arbitrary under the circumstances. *163 Jack M. Chesbro, 21 T.C. 123, 128 (1953), affirmed (C.A. 2, 1955) 225 Fed. (2d) 674. The allocation of distributions to the calendar year 1946 will be discussed infra. Counsel for petitioners also complain that no net worth computation was offered by respondent for corroboration or comparison. We rejected the identical argument of counsel under similar circumstances in United Dressed Beef Co., 23 T.C. 879 (1955), on appeal (C.A. 9, Dec. 29, 1955), holding that respondent is under no obligation to make such a computation. Moreover, petitioner could have offered evidence of net worth if he believed it would show error in respondent's computation, but did not do so. We also reject petitioner's argument that virtually all understatements of gross income derived from unreported corporate sales are offset by over-ceiling payments for scarce commodities on the black market made by him on behalf of Gene Clark, Inc., and that any profits derived from the resale of such commodities ultimately inured to the sole benefit of said corporation. We think there were some over-ceiling purchases and resales, but we do not believe that the purchases account *164 for substantially all of the diversions, and there is nothing to suggest that the proceeds of any resales or the profits therefrom were ever turned in to the corporation or were accounted for in any of the income tax returns. Clark, of course, suggests nothing in the way of amounts. We do not believe his vague and general testimony, and there is no corroboration of his statements except the limited evidence of Files (largely based on statements made to him by Clark) that he knew that some such transactions took place. Files had no knowledge of the amounts of purchases or resales. Clark has fully demonstrated that he is unworthy of belief and it is not surprising that his testimony with respect to records he purportedly kept of alleged black market purchases was vague and unconvincing. Files did not know of any records kept by Clark showing amounts expended for black market purchases. We are convinced that any books or records obtained by revenue agent Stutzman from petitioner during the course of the investigation of the tax liability of the corporation and its stockholders were all returned to Clark. In any event, petitioner was able to offer only one specific instance of a transaction *165 involving black market activities. While, as already stated, we believe that some illicit purchases were made by petitioner, there is no credible evidence as to whether the full cost thereof was or was not included in computing cost of goods sold on the corporate tax returns involved. Of even greater significance is the lack of any evidence that the profits from resale of illicit purchases were ever recorded on the books of the Company or reported in its income tax returns. Clark himself admitted that profits from over-ceiling sales made through Gene Clark Plumbing as a front for the corporation were never recorded on the books of either Plumbing Company or the corporation, and were not reported in any of the income tax returns. All this being true, the record affords no basis for making a reasonable estimate of amounts expended on behalf of the corporation which would justify a deduction or elimination from income. Paul Masters, 25 T.C. 1093, 1100 (1956), affirmed 243 Fed. (2d) 335 (C.A. 3, March 28, 1957); Jack M. Chesbro, supra, 129. Petitioner claimed at the trial and in his opening brief that Plumbing Co. and Gene Clark, Inc., coexisted *166 after April 23, 1946, as two separate and distinct business enterprises, and therefore not all the unreported sales in question were properly attributable to the corporation. Whether the unreported sales were, in the first instance, those of the Plumbing Co. or of the corporation is a question of fact. See Miller-Smith Hosiery Mills, 22 T.C. 581 (1954); United Dressed Beef Co., supra, 886. We are satisfied that none of the unreported sales in controversy were reflected in the corporate returns, and the Plumbing Company filed no returns for this period. It is our view that both organizations were treated as a single entity. Indeed, petitioner testified that after the corporation commenced operations, Plumbing Co. existed in reality only as a conduit to protect the former (which had the license to do business) from possible prosecution for violation of O.P.A. regulations. Petitioner, on reply brief, refers to the testimony of Clark to the effect that "all proceeds received from the sale of inventory which he believed belonged to Gene Clark Plumbing Company ended up in the hands of Gene Clark, Inc." Petitioner then concludes in said brief "the sole taxable *167 entity was the corporation." Respondent likewise takes the position that all sales after May 1, 1946, were by or on behalf of the corporation. Thus, both parties appear to agree with our view that the enterprises were merged into a single entity, Gene Clark, Inc., and the profits are attributable to it whether recorded and reported or not. It goes without saying, however, that to the extent such profits were diverted to Clark, they are likewise taxable income to him. (1946-A) Computation of Understatement We turn next to the computation of the understatement for 1946. The revenue agent's report was received in evidence by agreement of the parties for the limited purpose of explaining the basis for respondent's determination. The total adjustment to net income of Gene Clark, Inc., for fiscal 1947 as recapitulated in the agent's report was $102,050.17. Although the agent, in his report, recognized that the net income per corporate return for fiscal 1947 ($30,632.10) should be reflected in addition to the above amount of $102,050.17, he failed, by some inadvertence, to add the net income per return in his recapitualtion. Giving effect to net income per return, we reach a figure of *168 $132,682.27. From this amount, we deduct $3,058.50 in accordance with our Findings of Fact eliminating the Creed transaction from corporate earnings. (It is to be noted, however, that the credit of $2,378.50 in that transaction was income to Clark and his wife on the community property basis.) We next deduct $1,480.67 for cashing of accommodation checks per discussion, infra. We also deduct $48,694.38 as accrued Federal income taxes of Gene Clark, Inc., for fiscal year 1947, calculated on the basis of net income before taxes ($128,143.10) as reconstructed by the agent after the adjustments we have made. The agent was in error in failing to accrue such taxes. Estate of Esther M. Stein, 25 T.C. 940 (1956). The remaining earnings ($79,448.72) were available for distribution on the basis of the foregoing. The agent deducted $63,488.47 on the theory that the items which together total that figure were "not available" for distribution in fiscal 1947. We find no basis for this view. Our reasons will be set forth infra. The significant issue is the year in which these items are to be taken into account rather than the amounts themselves. Contra adjustments relating to this *169 group of items for fiscal 1948 will be discussed later in connection with that year. Respondent determined that Clark received taxable dividends of $44,227.13 from Gene Clark, Inc., for 1946, half of which ($22,113.57) was taxable to him on the community property basis. The explanation of the determination, based on the revenue agent's report, is that the corporation as a result of the diversions to Clark and Koyl, in effect distributed to them $74,984.96 as ordinary dividends during fiscal 1947; that 84.259 per cent thereof ($63,181.62) is allocable to calendar year 1946; and that $44,227.13 (70 per cent of $63,181.62) is attributable to Clark, who was the owner of 70 percent of the stock. As indicated above, respondent determined that one-half of $44,227.13 (or $22,113.56) is taxable to Clark on the community property basis as income for 1946, and a like amount is taxable to his wife. We will discuss infra the various adjustments and the objections raised by petitioner. Suffice it to say at this point that petitioner has failed to meet the burden of proving that respondent's determination was excessive and we therefore affirm his determination by adding $22,113.56 to Clark's *170 income for the year 1946. We recognize that the revenue agent's report is taken by the parties as the substantial basis for respondent's determination. We also recognize that the revenue agent erred, for example, in failing to accrue taxes of the company for fiscal 1947, and that there are minor adjustments to be considered infra. These errors were adverse to petitioner's interest. There were, however, also errors in his favor (such as the so-called "unavailable" items totalling $63,488.47). It is clear that all such errors may be corrected and that, if the circumstances warrant it, respondent may be affirmed in a proper case for reasons other than those which he, himself, has assigned. John I. Chipley, 25 B.T.A. 1103, 1105-6 (1932). See also James P. Gossett, 22 B.T.A. 1279, 1284 (1931) affirmed 59 Fed. (2d) 365 (C.A. 4). Since the available earnings for fiscal 1947 which we have calculated above ($79,448.72) exceed the amount shown in the revenue agent's report ($74,984.96), we think we should add the following statement. Respondent has filed no claim for an additional deficiency for 1946. Even if such a claim were filed, however, we *171 could not find an additional deficiency on the record before us. The burden of establishing such an additional deficiency would be upon the respondent. Our affirmance of the deficiency determined in his statutory notice is based in material respects upon petitioner's failure to meet his burden of proof. There is insufficient affirmative evidence in the record, however, to find an additional deficiency, with respect to which the burden shifts to respondent.
For like reasons, we point out that although we have calculated earnings available for distribution for fiscal 1947 in an amount in excess of respondent's determination of actual distributions for fiscal 1947, there is no basis for carrying the excess over into fiscal 1948 as earnings available for distribution in that year. Respondent has made no determination to that effect, and it is not supported by affirmative evidence. (1946-B) Items Totalling $63,488.47 Available for Distribution in Fiscal 1947 As indicated supra, we have eliminated the agent's deduction for fiscal 1947 of the total amount of $63,488.47 in calculating earnings available for distribution (but allow corresponding adjustments for fiscal 1948). Five items *172 comprise the above amount, and we consider each. (1) Truman Johnson - $6,000. As set forth in our Findings, Gene Clark, Inc., was credited with $6,000 by Johnson in 1946. The item was for plumbing materials and services rendered by Gene Clark, Inc. The credit was applied to a house purchased by the company from Johnson in 1946. It was never recorded on the books of the company or reported for income tax purposes. It is clearly an income item to the company and is as much includible in available earnings as any other item of income. The availability of earnings is not dependent upon the form of the asset by which they are represented. There is no requirement that the income be in cash or any particular tangible form, or that it may be distributed only in the form in which it is earned. Internal Revenue Code 115(a) and (b); Regulations 111, section 29.115-2. (2) H. L. Brittain - $1,860.40. Petitioner does not appear to contest inclusion of this item in the company's income for fiscal 1947. His position is that it was not "available for distribution," but offers no *173 support for his view other than that the agent so treated it. Respondent, on brief, takes the position that this (as well as the other items in the group totalling $63,488.47) was available for distribution. We agree with this view for the same reasons as those discussed in paragraph (1) above. (3) So-called deferred sales income - $49,210.15. The underlying facts relating to this item are set forth in our Findings and need not be repeated here. We think it is clear that the so-called deferred sales income of $49,210.15 was properly included by the agent in the company's income for fiscal 1947, and should not have been deferred by the company until fiscal 1948. The amount was not only accrued, but actually collected in fiscal 1947. Petitioner does not appear to disagree with the view that the item should be treated as income for fiscal 1947. His position is rather that a corresponding reserve should be set up in fiscal 1947 and that the amount thereof be treated as not available for distribution in that year, at the same time admitting it would be available in fiscal 1948. For the reasons stated in paragraph (1) above, we think it as available as any other income in fiscal 1947. *174 We agree in this respect with respondent's position on brief. Petitioner further urges that the item should not be deemed available in both years. With this we agree, and a contra adjustment will be made in relation to fiscal 1948. (4) Merchandise purchases - $2,714.42. The agent disallowed merchandise purchases in the total amount of $2,914.42 for lack of substantiation. Petitioner has offered no evidence of substantiation. One of the items comprising the total of $2,914.42 was a check to Koyl in the amount of $200. The agent, however, reduced available earnings by $2,714.42 (not reflecting the Koyl check). We think it clear that neither the amount of $2,714.42 nor the $200 item were properly deducted from available earnings. No reason to the contrary is suggested. Respondent, on brief, resists the deduction from available earnings, and we agree. The effect of the disallowance is to increase net earnings, all of which were available for distribution for the reasons set forth in paragraph (1) above. (5) Bad debts - $3,703.50. The agent disallowed the deduction of bad debts in the amount of $3,703.50 on the ground that worthlessness had not been established. Petitioner failed *175 to establish worthlessness. The agent, nevertheless, reduced available earnings by the amount which he disallowed. Again respondent argues on brief that the reduction should not have been made, and again we agree. Likewise, as in paragraph (4) above, the effect of the disallowance is to increase net earnings, all of which are available for distribution for the reasons set forth in paragraph (1) above. (1946-C) Corporate Net Income per Return - Fiscal 1947 In our computation of understatent for 1946, we included in corporate earnings for fiscal 1947 available for distribution as dividends the amount of the company's earnings reported on its return. (We deducted corporate income taxes, however, including taxes on income reported.) Petitioner contends that the corporate earnings in the amount of $30,632.10 reported on the original return of Gene Clark, Inc., for that period, should be deducted from earnings available for distribution as dividends. Referring to his "analysis" of such earnings, he argues that the net income per return was retained in the business, and hence was not distributed to anyone. To support his position, petitioner points out that the revenue agent, in his *176 computation of income available for distribution as dividends, did not include therein the amount of net income per return. Respondent, on the other hand, insists that the corporate income per return should properly have been treated as part of earnings available for distribution, despite the revenue agent's failure to include them. Examination of the revenue agent's report reveals that he computed the total net income (excluding "notes receivables" and "other investments") to be $132,682.27, and that this amount specifically included the corporate income per return for fiscal year 1947. See Joint Exhibit 3-C, Schedule 1, p. 5. For some unexplained reason, however, the agent, in setting up his schedule of distributions to stockholders, failed to use said amount as a starting point in computing the total net income available for distribution as constructive dividends. Instead he used only "net adjustments" to corporate income in the amount of $102,050.17. Joint Exhibit 3-C. Schedule Q, p. 81. The revenue agent obviously erred in this respect. We believe respondent's view on brief is the proper one, and we hold that the corporate earnings per income tax return must be included in *177 available earnings. In his refutation of petitioner's attack on the correctness of the deficiency, respondent is not to be restricted to the computations or theory of the revenue agent. The agent's report was received by agreement merely to explain the basis for the ultimate statutory determination. As already pointed out, it discloses errors favorable as well as adverse to petitioner. We are not limited to the correction of errors only when it is to the advantage of petitioner for us to do so. Respondent has an equal right to our consideration. Petitioner was fully aware of the issue and no element of surprise is present. In all events, there is no doubt in our mind that we have the authority (and duty) under the circumstances of the instant case to correct the error in question. See James P. Gossett, supra; John I. Chipley, supra. We think there can be no doubt as indicated supra, that under the statute all accumulated net earnings and profits of Gene Clark, Inc., less accrued income taxes for fiscal 1947, were available for distribution as dividends and that *178 the form of assets in which such earnings were reflected or distributed is immaterial. Internal Revenue Code 115(a) and (b); Regulations 111, section 29.115-2. Petitioner cites no authority to the contrary. Needless to add, the fact that earnings are available for distribution does not mean they were actually distributed. The availability of earnings is material only to the question of whether actual distributions are to be treated as ordinary income or otherwise. Here, respondent has determined that distributions were made to petitioner and, as already stated, petitioner has failed to meet the burden of proving the contrary or that the amount so determined was excessive for 1946. (1946-D) Substitutions Petitioner would further reduce earnings available for distribution as dividends for fiscal year 1947 by the amount of so-called "substituted items in bank deposits" of the corporation in the sum of $14,806.77. In reconstructing corporate income by the bank deposits method, the revenue agent included as additional gross receipts all checks which were not reported as sales or otherwise accounted for on the books of the corporation. Upon examination of *179 the original bank deposit slips, he discovered certain checks listed thereon, which were deposited but which did not correspond in amounts with the items in the "cash receipts" records of the corporation, and therefore, concluded that such checks constituted substitutions for cash items purportedly deposited, but actually diverted by the officer-stockholders. The underlying facts are set forth in our Findings. The revenue agent concluded that the corporation had additional unreported sales during fiscal 1947 in the amount of $83,960.08, of which $14,806.77 represented such substitutions, and that the corporation failed to report on its return said sum for 1947. The amount of $14,806.77 was therefore added to adjustments to net income for that year. The testimony of the comptroller with respect to the handling of checks and cash receipts, while general in nature and not directed to particular items, supports respondent's position. Files testified that at various times during the period in question Clark gave him checks made out to the corporation by customers for sales, which were unreported on the corporate books, in exchange for amounts of cash taken by petitioner which had been *180 reflected on the books but had not been deposited. The checks were thereafter deposited in the corporation's bank accounts. Petitioner does not deny that substitutions occurred, but claims that any cash taken by him in connection with unrecorded sales was used by him for over-ceiling purchases. He produced no records to support such use or the amounts which he expended for such purchases, and admits that he did not record or report the resale of any such purchases or the profits therefrom. It is clear, also, that since the cash receipts from sales per books and sales reported in the company's income tax return reconciled in total amounts, and both reconciled in total amount with actual deposits, the unrecorded checks must have been substituted in the deposits for other items of cash which were recorded on the books but were not deposited. Petitioner has failed to meet the burden of proving error in respondent's determination in this respect (as explained on the basis of the revenue agent's report), except to the extent set forth below. Petitioner claims that some of the funds for which substitutions were made were used to cash checks for the accommodation of customers and employees. *181 The testimony of Files supports the fact that accommodation checks were cashed, and the revenue agent's report shows the deposit of a number of small checks ranging up to $100. The record does not disclose the amount of such accommodation checks. Nevertheless, where, as here, there appears to be a right to an allowance, but the amount is not shown, we are warranted in allowing what we think is an appropriate amount, resolving all doubts against the petitioner who is responsible for any inadequacies of proof. Cohan v. Commissioner, (C.A. 2, 1930) 39 Fed. (2d) 540. We hold, therefore, that $1,480.67, which is 10 per cent of the amount considered to be "substituted" checks in fiscal 1947 represented "accommodation" checks, and, as indicated in our "(1946-A) Computation of Understatement," supra, we have made an appropriate adjustment in determining corporate earned surplus. (1946-E) Y. L. Creed Petitioner urges that the revenue agent, in reconstructing corporate income for fiscal 1947 improperly included unreported sales to Creed in the amount of $3,058.50 when the balance *182 due Gene Clark, Inc., was only $2,378.50. The underlying facts relating to this disputed item are set forth fully in our Findings of Fact. On the basis of our Findings, it is clear that $3,058.50 is to be eliminated from corporate earnings for fiscal 1947. We have already made this allowance in our Opinion under the heading "(1946-A) Computation of Understatement." It is equally clear from our Findings, however, that the credit allowed Clark by Creed in 1946 in the amount of $2,378.50 was income to Clark and his wife for 1946, one-half thereof being attributable to Clark individually. (1946-F) "Notes Receivable - Officers" Account - $36,149.29 A further difference between the parties relates to the inclusion of the "Notes Receivable" account in the amount of $36,149.29 in the dividends distributed to Clark and Koyl for fiscal 1947. Petitioner contends that the withdrawals debited to said account in the above amount represented a series of "loans" to the two officer-stockholders and, therefore, were not properly treated as dividends distributed to them. Respondent, on the other hand, maintains that the withdrawals represented diversions of corporate funds to Clark and Koyl, and *183 were in fact informal or constructive dividends to them. The issue is one of fact and the intention of the parties is controlling. Carl L. White, 17 T.C. 1562, 1568 (1952). Many criteria have been used by the courts as aids in determining the intention of the parties. No one factor is alone conclusive. We must look to substance rather than to form. Neither the language nor the formalities followed preclude us from determining the true nature of the transaction. William C. Baird, 25 T.C. 387 (1955), and cases cited therein. The absence of any promissory notes (although the account was headed "Notes Receivable") or security, and the failure to charge or pay interest, while not conclusive against petitioner on the basic issue, are factors to be considered. On the other hand, the treatment of the withdrawals on the corporate books as "Notes Receivable" and the references thereto in the corporate minutes and tax returns are likewise to be considered but are not controlling, since it is established that book entries or records may not be used to conceal realities *184 as a means of relieving the taxpayer from liability for income taxes. Ben R. Meyer, 45 B.T.A. 228, (1946); and cases cited therein. The statement attached to the company's return for fiscal 1947 relating to "Notes Receivable - Officers" is not only obviously self-serving, but is clearly inaccurate in material respects. (See particularly the reference to trust deeds, which Clark admits were never executed.) The following additional facts are, we think, of significance. The withdrawals of Clark and Koyl recorded in "Notes Receivable - Officers" (later "Trust Deeds") account were, on February 28, 1947, in exact proportion to their stock interests and consistent with their agreement to share in corporate earnings and profits. William C. Baird, supra.The funds of the company so withdrawn were primarily used as part of the purchase price of two Kansas farms, one for Clark, and the other for Koyl. It is important to note that the first purchase (North Farm) was for Clark, and that thereupon Koyl "indicated that he would like to own a farm." The second tract (South Farm) was then bought in Koyl's name. The company funds made available therefor debited to Clark *185 and Koyl in proportion to their stockholdings, were, we think, evidently used by them in an evening-up arrangement for their own benefit and in proportion to their interests. Upon consideration of all of the evidence material to this issue, we are convinced that the withdrawals in issue during fiscal 1947 in the amount of $36,149.23 were not intended to be loans, but were, in reality, diversions of corporate funds by the officer-stockholders, taxable as dividends to them. Estate of Helene Simmons, 26 T.C. 409 (1956). As already determined, supra, there were sufficient earnings available for distribution to cover the foregoing amount. Of that amount, $25,304.50 is attributable to Clark, and is part of the dividends determined by respondent to have been distributed to him for fiscal 1947. The computation relating thereto is included in our discussion supra under the heading "(1946-A) Computation of Understatement." Petitioner further contends that the agent added the notes receivable item of $36,149.29 in computing the net income of Gene Clark, Inc., for fiscal 1947, and urges error in this respect. While the agent's report is complicated, and in some respects confusing, *186 we do not understand from it that he intended to increase net income by that amount. Whether he did or not, we, in our own calculation of net income as well as earnings available for distribution, did not include the item of $36,149.29, so that we have given effect to petitioner's contention. See "(1946-A) Computation of Understatement," supra. (1946-G) Other Investments - $273.97 Petitioner contends that this item was likewise added by the agent to net income of Gene Clark, Inc., for fiscal 1947. We do not think the agent intended to do so, but again, whether he did or not, we did not include the item in our own calculation of net income or earnings available for distribution. See "(1946-A) Computation of Understatement," supra. (1946-H) Allocation of Constructive Dividends to 1946 Petitioner contends that respondent was arbitrary in allocating constructive dividends of $63,181.62 to Clark and Koyl for 1946 out of total constructive dividends of Gene Clark, Inc., for fiscal 1947 in the amount of $74,984.96. The ratio allocated to 1946 was 84.259 per cent. Eight months of the company's fiscal year was in 1946 and four months in 1947. (While petitioner does not admit any constructive *187 dividends for the period, he does not dispute, assuming there were such dividends, an allocation of 70 per cent to Clark and 30 per cent to Koyl according to their proportionate stock interests.) Clark's share for 1946 was determined to be $44,227.13. Petitioner has failed to establish that his share for 1946 was actually less (or greater) than the amount determined. He merely points to the fact that only two-thirds of the company's fiscal year was in 1946. We find no basis for holding that the allocation was arbitrary. We do not know the rationale on which it was based, and there is no occasion for us to speculate on it. Petitioner made no motion to require respondent "to file a further and better statement" (Tax Court, Rules of Practice, Rule 17(c)(1)) as a basis for challenging the allocation. No authorities are cited or reasons offered by petitioner to support his theory that the allocation, to be rational, must in this case be proportionate to the number of months of the corporation's fiscal year which fall in the taxpayer's calendar year. While, as above stated, we have no reason to speculate concerning respondent's reasons, we point out, if only for suggestive consideration, *188 that the withdrawals from "Notes Receivable - Officers" (which we have held to be dividends) reached the substantial net amount of $34,557.46 as of December 31, 1946, and increased only $1,591.83 between that date and April 30, 1947, the end of the company's fiscal year. In all events, although, as stated, the burden is on petitioner, the record offers some affirmative support for respondent's action in weighting the particular allocation by attributing the larger percentage to 1946. We think petitioner has failed to prove that the allocation was erroneous or arbitrary, and there is no basis for holding it invalid. Greenwood v. Commissioner, supra.
(1946-I) Farm Losses While our Findings of Fact are dispositive of this issue, some explanation of our views appears in order. Clark and Koyl each bought a farm. Clark's was known as the North Farm, and Koyl's as the South Farm. The expenditures in issue were all by checks, signed by Clark's father, and changed to a special account. Obviously, only those attributable to North Farm could be deductible. The evidence supports the conclusion that Clark's father at least managed the North Farm, but since some of the expenditures *189 handled by him were for each farm, it is inferable that he also managed, or participated in the management of the South Farm. The evidence does not establish otherwise. The evidence likewise fails to establish that the salary paid to him (drawn on the special account by him) was solely attributable to his management of the North Farm. The basic bank deposit in the special account was $5,000 which was made from corporate funds, but was debited to "Note Receivable - Officers." With this background, we have allowed or disallowed farm expenditures for 1946 as follows: We allow the deduction of the check dated October 17, 1946, for $274.95 on which the notation appears "Seed wheat - North Farm." We disallow check of the same date for $102.15 because there is no evidence that it was expended for North Farm. The check of December 6, 1946, in the amount of $590.36 was for taxes on both farms. We allow a deduction of $223.24 which was the amount of taxes paid on North Farm for the following year. While the tax for 1946 may have varied slightly either way, we do not think the variation could be sufficient to require a different approach. We disallow the check dated December 6, 1946, for *190 $36.50 because the check itself shows that the expenditure was for South Farm. We disallow the check dated November 2, 1946, for $21 because there is no evidence that it was expended for North Farm. The check dated November 9, 1946, for $195.57 is disallowed because it appears from the check that the expenditure was for South Farm. We allow $475 for salary to Clark's father, which is one-half of the total salary drawn by him for 1946. There is no evidence that the total salary of $950 was exclusively for services in managing North Farm, or that more than half of that amount was for such services. We feel justified in allowing $475, as above set forth because the evidence, though vague, indicates that at least half of his attention was directed to management of North Farm. See Cohan v. Commissioner, supra.One-half of the farm allowances are attributable to Gene, and one-half to Faye on the community property basis. III. Understatement of Income - 1947 (1947-A) Adjustment of Long-Term Capital Gain For the calendar year 1947, respondent, in his statutory notice of deficiency, determined that Gene Clark realized a long-term capital gain of $105.15 from the sale *191 of a residence in lieu of $304.75 reported on his return, and accordingly decreased the gain thereon, one-half of which was attributed to each petitioner as separate income. Petitioners claim no further adjustment with respect to this item. (1947-B) Constructive Dividends from Gene Clark, Inc., Fiscal Year 1947 In accordance with our discussion of the year 1946, under the heading "(1946-A), Computation of Understatement," it is apparent without repeating our analysis that Clark's share of constructive dividends from Gene Clark, Inc., for fiscal year 1947, attributable to Clark and his wife on the community property basis, is $8,262.34. This is 70 per cent of the difference between the total dividends of $74,984.96 attributable to both Clark and Koyl from fiscal 1947 less $63,181.46, attributed to calendar year 1946 as dividends to them for that year. Onehalf of $8,262.34 is taxable income to Clark for 1947, and a like amount is taxable income to his wife. (1947-C) Revenue Agent's Adjustments relating to Gene Clark, Inc., Fiscal 1948 Following immediately is Schedule A, which summarizes the adjustments made by the revenue agent in relation to Gene Clark, Inc., for its fiscal *192 year ending April 30, 1948. The parties have agreed that the revenue agent's report be received in evidence for the purpose of showing the basis for respondent's ultimate determination. We will consider, under succeeding headings, the various issues specifically disputed, including those relating to the adjustments actually made, and those affecting net income or earnings available for distribution which are not referred to by the revenue agent. Schedule A Summary of Revenue Agent's Adjustments Relating to Gene Clark, Inc., Fiscal Year Ended April 30, 1948 Gene Clark
Archie Koyl
Total
1947
1948
1947
1948
Adjustment to Net Income
$ 92,208.62
Reversal FYE Apr. 30, 1947 - deferred in-
come
49,210.15
Assets distributed per alleged sale
3,409.91
Recovery of Bad Debts
4,786.30
Truman Johnson item
6,000.00
Total
$155,614.98
Adjustments to Net Income not available
6,381.15
Total distribution per RAR
$149,233.83
$43,376.22
$62,958.37
$18,589.81
$24,309.43
Amount charged against surplus in Ex-
hibit I of this report: Gene Clark - 1947
$ 41,238.65
Archie Koyl - 1947
17,673.70
Partial liquidating dividends: Gene Clark - 1947
$43,376.22
Less: Amount charged against
surplus
41,238.65
$ 2,137.57
Gene Clark - 1948
62,958.37
65,095.94
amount carried to Schedule1A in concur-
rent RAR on Gene O. and Faye Clark
Archie Koyl - 1947
$18,589.81
Less: Amount charged against
surplus
17,673.70
$ 916.11
Archie Koyl - 1948
$24,309.43
25,225.54
amount carried to Schedule 1A in concur-
rent RAR on Archie M. and Fawn A.
Total distribution per RAR
$149,233.83
Koyl
Amount carried to Schedule 5 in concur-
rent RAR on Gene O. Clark: Amount carried forward. from FYE
4-30-1947
$ 8,262.34
Amount charged against surplus FYE
4-30-1948
41,238.65
Total
$ 49,500.99
*193 (1947-D) Corporate Net Income per Return, Fiscal 1948 The revenue agent recognized that net income per return for fiscal year 1948 in the amount of $16,726.40 should be reflected in addition to the increases set up in his adjustments ($92,208.62) but again failed to include the income per return in his recapitulation. For the same reasons as those set forth under the heading "(1946-C) Corporate Net Income per Return - Fiscal 1947", we hold that corporate net income per return for fiscal 1948 must be given effect in determining total net income of Gene Clark, Inc., for the fiscal year in question. (1947-E) Increased Sales Included in the agent's adjustments to income were increased sales in the net amount of $81,995.71. The gross increase was $131,205.86 which the agent reduced to $81,995.71 by properly allowing a contra deduction of $49,210.15 which was included in the company's net income for fiscal 1947. While petitioner does not concede any of the items, he raises specific objections only with respect to those discussed in the following subparagraphs. (1) Substitutions. The first group of items, totalling $35,419.36 are referred to as "substituted items," and are of *194 the same nature, and determined in the same manner, as those discussed supra under the heading "(1946-D) Substitutions." The burden of proof is on petitioner to show error in respondent's determination, which is explained by the revenue agent's report, received in evidence by stipulation of the parties. Moreover, as already appears in our Findings, and as analyzed in our discussion under 1946-D, supra, there is affirmative testimony (although much of it is general in nature) as well as circumstantial evidence, which in many respects supports respondent's determination. Except as indicated below, petitioner has not offered any acceptable evidence to the contrary, and does not deny that substitutions were made. His claim that he used any cash from unrecorded sales to make over-ceiling purchases again is not substantiated in fact (except to the limited extent of Files' testimony already referred to under the heading "Understatement of Income - 1946") or in amount. Again he did not account for any proceeds or profits from over-ceiling resale of any such purchases. Since petitioner has failed to show error, except as indicated below, we hold for respondent on this group of items, subject *195 to the adjustments we make below, for the same reasons as those advanced under 1946-D, supra, which we have no occasion to repeat here. We now discuss the particular substituted items to which petitioner specifically objects. (a) We eliminate the item of $1,094.52 relating to Pacific Pumps, Inc., which, as shown by our Findings in subparagraph (7) under the heading "Matters Relating to Earnings and Profits Available for Distribution," was a duplication by the agent due to an incorrect designation in the journal ledger as having been received from E. J. Weiss, who was president of Pacific Pumps, Inc.
(b) We agree with the agent's treatment of three checks from Hamilton Homes, Inc., in the respective amounts of $1,221, $2,295, and $2,170. As set forth in our Findings these checks were received by the company for plumbing material and services. They were not included in the sales of the company. The first two checks were deposited in the company's bank account on September 16, 1947, as part of a total deposit of $21,180.51. The third check was deposited in the company's account as part of a deposit in the amount of $10,016.46. In the light of all of the evidence in the record as *196 to substitutions, and particularly in view of the fact that the cash receipts from sales per books and sales reported in the company's tax return reconciled in total amounts, and both reconciled in total amounts with actual deposits, the only possible inference is that the Hamilton Homes, Inc., checks, which were deposited but not included in sales, were substituted for other receipts included in sales but not deposited. Petitioner has failed to meet the burden of proving otherwise. (c) For the same reasons assigned in subparagraph (b), above, we agree with the agent's treatment of check of $1,000 received from H. K. Niles. This check was not included in sales, but was included in the bank deposit of September 16, 1947, the total deposit being $21,180.51. (d) With alike factual background, and for the same reasons, we agree with the agent's treatment of a check in the amount of $6,670 received from Southern California Investment Company. The check was endorsed "Gene Clark, Inc., Gene Clark" and was cashed on March 19, 1948. A cashier's check in the same amount was acquired on the same date and was deposited in the company's bank account on March 31, 1948, as part of an over-all *197 deposit of $12,816.85. The receipt of the $6,670 was not recorded in sales. Our Findings cover additional attending circumstances showing the receipt of $6,610 from four different transactions which were recorded on the books of the company, but there is no evidence that the receipts totalling $6,610 were deposited in the company's bank account. (e) On the basis of our discussion in subparagraphs (a) to (d) inclusive, the only adjustment we have made is to reduce substituted items by $1,094.52, as set forth in (a) above, giving a net amount of substitution to this point of $34,324.84. From this we again deduct 10 per cent ($3,432.48) to allow for cashing of accommodation checks, resulting in a final net addition to income for substituted items in the amount of $30,892.36. Petitioner has made no specific objections to the items included in substitutions other than those discussed above, and has not met his burden of proof with respect thereto. (2) Other items - increased sales. With respect to items of increased sales, other than those discussed under substitutions (subparagraph 1, above), petitioner makes concessions as to the following: He admits on brief that $38,009.74 was *198 received from George Meissenburg (Valley Boulevard Plumbing and Electric Company), and that said amount was not reported on the tax return of Gene Clark, Inc., or on the return of Clark, and that the partnership filed no return. He likewise admits on brief that a check dated January 24, 1948, in the amount of $1,902.73 "was not reported as taxable income by the corporation (as it should have been); it was not reported in the corporation's bank account nor was it recorded on the corporation's books." He has also stipulated that the items relating to Allen T. Mitchell & Son ($2,294.50), A. & F. Plumbing and Heating Co. ($1,158.44) and Ben Lang ($1,558.44) were not entered on the company's books or reported for income tax purposes by the company or by petitioner. As to all other items which the agent included in increased sales, while petitioner makes no express concessions, he likewise establishes no error, and we have found none. (3) Summary - increased sales. On the basis of the discussion under subparagraphs (1) and (2) above, we reduce the computation of increased sales from the net amount $81,995.71 to $77,468.71. (1947-F) Adjusted Net Income, Gene Clark, Inc., Fiscal 1948
*199 Petitioner establishes no error with respect to adjustments to the company's net income for fiscal 1948, other than factors considered supra, and our examination thereof likewise discloses no errors except those adjusted by us above. The agent's total net adjustments to net income of the company was $92,208.62. Our adjustments to increased sales, supra, reduce this amount by $4,527, resulting in net adjustments, as revised, (and before adding corporate net income per return) in the amount of $87,681.62. To this, for the reasons stated above, we add corporate net income per return in the amount of $16,726.40, resulting in a final net income figure for the company for fiscal 1948 of $104,408.02. (1947-G) Earnings Available for Distribution as Ordinary Dividends, Gene Clark, Inc., Fiscal 1948 In addition to adjustments to net income, the agent adds a number of items in computing earnings available for distribution. We consider them in the following subparagraphs. (1) Deferred income. The agent treats the amount of $49,210.15 as available for fiscal 1948. The item itself was included as income in fiscal 1947, and we agreed that it was properly so includible. The agent, however, *200 treated it as unavailable for distribution in fiscal 1947. We held that he was in error in this respect, and found that it was available for distribution in that year. (See 1946-B(3), supra.) Consistent with our holding, we eliminate it from earnings available in fiscal 1948. On the other hand, the agent eliminated from available earnings for fiscal 1948 the amount of $6,381.15, which was the total of the Ben Lang item of $1,300.75 and advance on contract sales in the amount of $5,080.40. We think the agent likewise erred in eliminating these items. The Ben Lang item was included in sales for fiscal 1948 (the agent transferring it from fiscal 1949) and the advance on contract sales was the same type of deferred income as the item of $49,210.15. We think both are includible in available earnings for fiscal 1948 for the same reasons as those discussed supra under 1946-B(1) and (3). Contra adjustments will, of course, be considered for fiscal 1949. (2) Assets distributed per alleged sale. The agent treats an amount of $3,409.91, labeled "Assets distributed per alleged sale" as an addition to available earnings. Petitioner objects, and on the record before us, we must agree with petitioner. *201 The agent's explanation is as follows: "Sale of depreciable business assets claimed per return as losses from said sales have been disallowed in the amount of said losses in Exhibit G of this report. The sales were not made to the third parties whose names appeared in the books of the taxpayer, but were distributed in kind to an officer or officers of the taxpayer." Assuming, arguendo, that the statement of the agent is supported by affirmative evidence, we do not think it supports an addition to available earnings as such. The proper treatment would be to restore the disallowed losses in determining net income. We cannot tell from the agent's report whether he had done so or not, although there is some indication from an item in his adjustments, similar in amount, but not identical, that he has. If he has, the addition of $3,409.91 to available earnings would be a duplication. If he has not, we can only say that there is nothing in his report which would warrant us in holding that the respondent has actually determined that net income is to be increased by this item. We may add that respondent has not clarified the issue on brief. (3) Recovery of bad debts. The revenue agent *202 increased available earnings by the amount of $4,786.30. Of this amount, $3,216.90 resulted from the collection of part of the sum of $3,703.50 which was disallowed as a deduction for fiscal 1947 (see 1946-B(5) supra) and was used to increase net income and available earnings for fiscal 1947. It must, therefore, be eliminated from the calculations for fiscal 1948 to avoid duplication. The balance of $1,569.40 represents allowances of bad debt deductions of $1,266.40 (H. L. Brittain) and "Bad debt allowance - other accounts reversed in previous year" ( $303). We find no basis for holding that the $1,569.40 is to be used to increase available earnings for fiscal 1948. We accordingly eliminate the entire amount of $4,786.30 from the agent's adjustments to available earnings. (4) Truman Johnson - $6,000. We included this item as part of net income and available earnings for fiscal 1947. (See 1946-B(1), supra.) It must, therefore, be eliminated from the calculations for fiscal 1948, to avoid duplication. (5) Accrued taxes and additions to tax. In determining earnings of Gene Clark, Inc., available for distribution as ordinary dividends for fiscal 1948, the agent failed to accrue *203 Federal income taxes for fiscal 1948 or additions to tax under section 293(b) for fiscal 1947. Each of these items should have been accrued. Estate of Esther M. Stein, supra.The respective amounts thereof are $39,399.42 and $19,979.69. (6) Summary - earnings available for distribution - fiscal 1948. The total net income of Gene Clark, Inc., as finally adjusted, for fiscal 1948 was $104,408.02. (See 1947-F, supra.) From this we deduct the total accruals set forth in subparagraph (5) above, in the amount of $59,379.11, leaving a balance of earnings available for distribution as ordinary dividends in the amount of $45,028.91. (1947-H) Distributions, Gene Clark, Inc., Fiscal 1948 The revenue agent's report sets up a total distribution for fiscal 1948 of $149,233.83. It is clear that in doing so, he included and reflected the total amount of $63,406.36 which we have eliminated in 1947-G(1), (2), (3) and (4), supra. We must, therefore, deduct the latter amount, leaving net distributions of $85,827.47. We realize, of course, that he did not include in his calculation corporate earnings per return, and that he eliminated the item of $6,381.15 referred to by us in *204 1947-G(1), supra. While it was appropriate for us to reflect these items in determining earnings available for distribution as ordinary dividends, we cannot use them to increase actual distributions as reflected in respondent's final determination. On the other hand, while we deducted accrued taxes for fiscal 1948 and additions to tax under 293(b) for fiscal 1947 in determining earnings available for distribution as ordinary dividends, we do not reduce actual distributions by the amount of taxes and additions to tax because actual distributions may, and often do, exceed available earnings, the excess being in the nature of liquidating dividends. Other than the adjustments we have made above, petitioner has failed to meet the burden of proving error in respondent's determination. Accordingly, we accept the figure of $85,827.47 as representing total distributions. We apply this first to the amount of $45,028.91, earnings available for distribution as ordinary dividends. The balance of $40,798.56 will be treated as a liquidating dividend, ( Drybrough v. Commissioner, 238 Fed. (2d) 735, (C.A. 6, 1956), affirming in part and reversing on another issue United Mercantile Agencies, Inc., 23 TC 1105) *205 but since the part thereof allocable to Clark, (being 70 per cent thereof - $28,558.99) does not equal the basis of his stock, it is not material as to his or his wife's taxes for 1947. It will be discussed infra in connection with calendar years 1948 and 1949. Of the amount of $45,028.91 (available earnings), we attribute 70 per cent ($31,520.24) to Clark. Our reasons for so doing are apparent from our prior discussion, which need not be repeated here, especially since the agent uses this ratio and petitioner's testimony shows that he received a minimum of 70 per cent of whatever earnings were distributed. The actual distributions calculated above ($85,827.47) must first be applied to the earnings available for distribution as ordinary dividends in the amount of $45,028.91, of which $31,520.24 is att'ributable to Clark. On any appropriate basis of allocation of distributions ($85,827.47) from fiscal 1948 to calendar 1947 (which included eight months of fiscal 1948), the distributions attributable to calendar 1947 would be at least sufficient to encompass total ordinary dividends including the $31,520.24 attributable to Clark. We accordingly attribute the entire amount of ordinary *206 dividends distributed to Clark for the company's fiscal 1948 to Clark's calendar year 1947. We have no occasion to allocate the amount of $40,798.56 treated as liquidating dividends (or the amount of $28,558.99 attributable thereform to Clark) as between calendar 1947 and calendar 1948, because it is not material to calendar 1947, since the cost of Clark's stock was not exceeded thereby in 1947. (1947-I) Ordinary Dividend Distributions to Clark for Calendar 1947 On the basis of the discussion in paragraphs 1947-B to 1947-H, inclusive, there was distributed to Clark for calendar year 1947 (to be accounted for by him and his wife on the community property basis) ordinary (constructive) dividends totalling $8,262.34 from Gene Clark, Inc., allocated from fiscal 1947, and like dividends of $31,520.24 from the same company allocated from fiscal 1948. The total is less, of course, than the amount of $49,500.99 determined by respondent in his statutory notice of deficiency. (1947-J) Farm Losses With the background of our discussion under 1946- I, supra, we think it apparent that our Findings are dispositive of this issue, allowing a deduction of $100 for salary to *207 Clyde R. Clark, and $223.24 for 1947 taxes. As to the check for $85 for overhauling a truck, neither the check nor the oral evidence establishes that the payment was related to the operation of the North Farm. The items allowed are attributable one-half to Gene and the other half to Faye on the community property basis. IV. Income - 1948 (1948-A) Net Income, Gene Clark, Inc., Fiscal 1949 (1) Corporate net income per return. The income tax return of Gene Clark, Inc., for fiscal 1949 showed a loss of $4,154.03. (2) Adjustments to net income. The agent, in his report (received in evidence by stipulation as explanatory of respondent's ultimate determination) makes adjustments in the total amount of $46,575.16, which he treats as income of the company for fiscal 1949. We discuss the adjustments in the following subparagraphs. (A) Unreported sales. The agent increases sales by a net figure of $30,836.68. In arriving at this amount, he correctly eliminated the Ben Lang item of $1,300.75 and "Advance on Contract Sales" in the amount of $5,080.40, both of which items we (and the agent) included in income for fiscal 1948 (although the agent erroneously eliminated them from available *208 earnings for fiscal 1948). See 1947-G(1), supra. (i) Substituted items. $8,074.79 of the increase in sales was attributed to substituted items in the agent's report. From this we deduct $807.49 for cashing of accommodation checks. See discussion under 1946-D, supra. As to the balance of $7,267.30, petitioner has failed to meet the burden of proving error, and we have found none. We accordingly approve inclusion of the latter amount in unreported sales. (ii) Additional unreported sales. With respect to additional unreported sales, petitioner makes some concessions on brief. He lists a total of $16,064.84 in checks from Valley Cities Supply Co., all within fiscal 1949. He then makes the following statement: "The foregoing checks, totalling $16,064.84, were issued by Valley Cities Supply Company to Gene Clark for merchandise, except that check No. 659, for $1,795.55, was issued to Gene Clark, Inc. That check was cashed and the proceeds used to purchase two cashiers checks; one to Gene Clark in the sum of $1,034.33, and the other to Gene Clark, Inc. for $761.22. The check for $761.22 was deposited in the corporation's bank account and was recorded in its books. It was reported *209 in the income tax return as gross income for the fiscal year ended April 30, 1949. The other checks were either cashed or were used to purchase cashiers checks which were not deposited in the corporation's bank account, nor reported in its income tax return." The agent did not include the item of $761.22 in unreported sales. With respect to the remaining items of unreported sales, petitioner establishes no error and we have found none. (iii) Summary - unreported sales. On the basis of the discussion in paragraphs (1) and (2) above, we reduce the unreported sales from $30,836.68 to $30,029.19. Petitioner has failed to meet the burden of proof of error in respondent's ultimate determination in this respect, as explained by the revenue agent's report, except to the extent of the adjustment which we have made. (B) Disallowance of cost of goods sold. The agent disallowed a total of $10,216.72 for which deduction had been taken on the corporate return as cost of goods sold. Two checks of $45.99 and $226.50 comprising part of the foregoing were disallowed as personal, family or living expenses of the officers of the corporation. The remaining check of $9,994.23 was payable to Archie *210 Koyl, and was disallowed as cost of goods sold for want of substantiation. Petitioner has again failed to meet the burden of proof of error in relation to such disallowances which, as explained by the revenue agent's report, are reflected in respondent's ultimate determination. (C) Other adjustments to net income. Petitioner does not appear to question, and has failed to meet the burden of proving error, in (1) disallowance of compensation of officers in the amount of $2,499.91; and (2) disallowance of other expenses in the amount of $3,021.85. (D) Summary - net income. On the basis of our discussion in paragraphs (A), (B) and (C) above, we reduce the agent's adjustments to net income from $46,575.16 to $45,767.67. The agent, however, failed to reflect the loss per corporate income tax return. We, therefore, make a further reduction of $4,154.03, as a result of which corporate net income for fiscal 1949, after our adjustments, is $41,613.64. (1948-B) Earnings Available for Distribution as Ordinary Dividends for Fiscal 1949 Subject to the adjustments which we make below, the corporate net income of $41,613.64 is available for distribution as ordinary dividends for fiscal *211 1949. See discussion under 1946-B(1), supra. (1) Erroneous additions to and eliminations from available earnings. The agent increases available earnings by an item of $1,300.75 relating to Ben Lang, and an item of deferred income of $5,080.40. We have already held that these items are includible for fiscal 1948 (see 1947-G(1), supra) and they must be eliminated in determining available earnings for fiscal 1949. On the other hand, the agent deducts an item of $7,976.11, which has been included in income for fiscal 1949 as advance on contract sales. We hold that the agent has erroneously deducted this amount in calculating available earnings for fiscal 1949 on the basis of our discussion under 1946-B(3), supra. (2) Accrual of taxes and additions to tax. In determining earnings of Gene Clark, Inc., available for distribution as ordinary dividends for fiscal 1949, the agent failed to accrue Federal income taxes for fiscal 1949 or additions to tax under section 293(b) for fiscal 1948. Each of these items should have been accrued. Estate of Esther M. Stein, supra.The respective amounts thereof are $14,555.23 and $17,826.18, or total accruals of $32,381.41. (3) *212 Summary - earnings available for distribution, fiscal 1949. The total net income of Gene Clark, Inc., as finally adjusted by us was $41,613.64. (See 1948-A(2)(D), supra.) From this we deduct the accruals set forth in 1948-B(2) above in the amount of $32,381.41, leaving a balance of earnings available for distribution as ordinary dividends in the amount of $9,232.23. As will appear infra, in discussing actual distributions for fiscal 1949, it is apparent that on any tenable basis for allocation as between calendar years 1948 and 1949, an amount in excess of $9,232.23 would be allocable to 1948. Distributions for fiscal 1949 must first be applied to available earnings, so that the full amount of $9,232.23 is attributable to calendar 1948. Since Clark was the owner of 100 per cent of the stock from prior to April 30, 1948, until March 1, 1949, it likewise follows that the entire $9,232.23 (less than the amount determined by respondent) is to be deemed distributed to him for calendar 1948. It is to be noted, however, that he included in the joint return for 1948 a dividend from Gene Clark, Inc., in excess of $9,232.23, so that on the record before us there was no understatement of dividends *213 on the 1948 return. (1948-C) Distributions, Gene Clark, Inc., Fiscal 1949 Respondent determined that Clark received unreported dividends for fiscal 1949 in the total amount of $26,233.75 (of which he attributed $23,351.09 to calendar 1948 and $2,882.66 to calendar 1949). He classified the entire amount as taxable dividends. It is clear, however, that (to the extent we find that actual distributions were made) any excess of such distributions over available earnings must be held to be liquidating dividends to be applied against the cost of Clark's stock. It is apparent from the revenue agent's report that he eliminated the item of $7,976.11 referred to by us in 1948-B(1), supra. While it was appropriate for us to reflect this item in determining earnings available for distribution as ordinary dividends, again (as in 1947- H, supra) we cannot use it to increase actual distributions as reflected in respondent's final determination. On the other hand, it is equally clear that the agent did include and reflect in the amounts distributed the Ben Lang item of $1,300.75 and the deferred income item of $5,080.40 which we included in the prior year. (See 1948-B(1), supra. *214 ) We must, therefore, deduct the total of these amounts ($6,381.15) from the amount determined ($26,233.75) leaving a balance of $19,852.60 as actual distributions. For the reasons stated in 1947- H, supra, we do not further reduce actual distributions by accrued taxes or additions to tax. Except for the adjustments we have made, petitioner has failed to meet the burden of proving error in respondent's determination of the amount of distributions for fiscal 1949. Of the total distributions of $19,852.60, we have treated $9,232.23 as ordinary dividends to Clark for calendar 1948 leaving a balance of $10,620.37 yet to be considered. Clark, however, ceased to be a stockholder on March 1, 1949. He was owner of 100 per cent of the stock for ten months of fiscal 1949. We must, therefore, attribute to him only five-sixths of the total distributions of $19,852.60, or $16,543.83. The difference of $3,308.77 must be deducted from the balance of $10,620.37 above referred to, leaving $7,311.60 to be treated as a liquidated dividend to Clark which will be applied against the cost of his stock. Since this amount, when added to $28,558.99, similarly attributed for fiscal 1948 (see *215 1947-H) does not equal the cost of Clark's stock, there is no capital gain resulting from the liquidating dividends, which, however, will be further considered in relation to calendar 1949. (1948-D) Farm Losses Respondent originally disallowed farm losses of $17,233.05 for 1948, but by stipulation, the amount thereof has been allowed. (1948-E) No Understatement for Calendar 1948 In the light of the entire discussion of income for the calendar year 1948, we find upon the record before us no understatement of income upon the joint return of Clark and his wife for that year. V. Income - 1949 (1949-A) Farm Losses Respondent originally disallowed farm losses of $17,060.52 for 1949, but, by stipulation, the above amount has been allowed as a deduction. Likewise, by stipulation, it was agreed that petitioner sustained a net operating loss for 1950 in the amount of $4,513.62, and that said amount is properly allowable as a loss carry-back to the year 1949. (1949-B) Interest Unreported Respondent determined unreported interest for 1949 in the amount of $242.49. Petitioner assigns no error with respect to this item. (1949-C) Ordinary Dividends Respondent determined *216 unreported ordinary dividends from Gene Clark, Inc., in the amount of $2,882.66. On the basis of the discussion under 1948-B(3) and 1948-C, both supra, we hold that petitioner received no ordinary dividends from Gene Clark, Inc., in 1949, all ordinary dividends as determined by us from the corporation for fiscal 1949 being attributed to calendar 1948. (1949-D) Gain on Exchange of Gene Clark, Inc., Stock As of March 1, 1949, Clark sold or exchanged all of the stock of Gene Clark, Inc. The selling price, per return, was $70,747.76. The agent reduced this by $36,149.29 (representing distributions treated as dividends in prior years) and his report shows a recognized gain of $34,598.47, on the theory that Clark had exhausted his cost in prior years. The parties have stipulated that the cost of said stock was $61,214.49. On the basis of our prior discussion, the only amounts by which said cost is to be reduced are liquidating dividends of $28,558.99 (see 1947- H, supra) and $7,311.60 (see 1948- C, supra). These amounts total $35,870.59, leaving unrecovered cost in the amount of $25,343.90. On the basis of the foregoing, the gain recognized was only $9,254.57. *217 Since the reported recognized gain from the sale of said stock exceeded $9,254.57, there was no understatement of capital gain for 1949. (1949-E) No Understatement for Calendar Year 1949 On the basis of our discussion of income for the calendar year 1949, on the record before us, we find no understatement on the joint return for Clark and his wife for that year. VI. Fraud General Respondent concedes that the individual returns of Faye Clark for the years 1946 and 1947 were not false and fraudulent with intent to evade taxes, and that no part of any deficiency in her taxes for either of said years was due to fraud. He contends, however, that the returns of Gene Clark for 1946 and 1947, and the joint returns for 1948 and 1949, were false and fraudulent with intent to evade taxes (section 276(a)), and that some part of each deficiency in respect thereof was due to fraud (section 293(b)). Since we have found no deficiency with respect to the years 1948 and 1949, we limit our discussion of fraud to the individual returns of Gene O. Clark for 1946 and 1947. Respondent has the burden *218 of establishing fraud by clear and convincing evidence. Arlette Coat Co., 14 T.C. 751 (1950). It is not incumbent upon respondent to prove that the entire deficiency was based on fraud as a basis for sustaining additions to tax under section 293(b), which requires only that "some part" of the deficiency be due to fraud. Our conclusions as to fraud are based upon a consideration of the entire record properly before us on that issue, and we are not limited to a consideration of respondent's affirmative evidence. Frank Imburgia, 22 T.C. 1002 (1954); Wallace H. Pettit, 10 T.C. 1253 (1948); L. Schepp Co., 25 B.T.A. 419 (1931). We recognize, of course, that fraud is not to be predicated in any respect upon petitioner's failure to meet the burden of proving error with respect to respondent's determination of deficiencies. It must be affirmatively established that each return in question was false and fraudulent with intent to evade taxes, from the standpoint of limitations, and that some part of each deficiency is due to fraud with intent to evade taxes if additions to taxes under section 293(b) are to be approved. See Frank Imburgia, supra. *219 We will, of course, discuss the issue of fraud specifically for each of the years 1946 and 1947. It should be noted here, however, that the intent to defraud is established beyond question. Because of our extensive Findings, and previous discussion of particular items, we limit ourselves in this respect to pointing out a few of the clear and significant indicia thereof. It is clear from the record that substantial (though undetermined amounts of receipts from sales made by Gene Clark, Inc., were neither recorded on its books nor reported on its income tax returns. It is likewise established that substantial amounts thereof passed to Clark personally. Clark, who was in general control of over-all corporate operations, admits that it was his own idea not to record certain sales as a means of withholding cash from the corporation, and that he directly participated in such diversions. On a number of occasions, Clark instructed Files, the comptroller of the corporation, to set aside cash receipts from sales and to turn the proceeds over to him without recording the sales on the books. Clark frequently gave customers' checks for sales which were unrecorded on the books, in place of *220 cash for like amounts which had been entered on the books, bringing about the substitutions which have been discussed supra. The cash went directly to Clark. Clark personally sold plumbing materials from the El Monte (main) office without accounting for or recording the proceeds on the books of the company. He also engaged in over-ceiling sales without accounting for all of the proceeds or profits therefrom. The proceeds from the many transactions summarized above were not reported in the income tax returns of either Clark or Gene Clark, Inc. Clark's explanations were largely unworthy of belief. In the main, he took the position that substantial funds, which he admitted that he took, were spent for materials and supplies, including the payment of overceiling charges. He had no record of the amounts which he claimed to have spent in this way and admitted not only that the books did not record his activities, but that he had not accounted for the profits from such transactions. See M. Rea Gano, 19 B.T.A. 518, 533 (1930). As already indicated, we think the intent to defraud is abundantly established. We add, for completeness, that we have reached our conclusions on the *221 issue of fraudulent intent without in any way relying upon the evidence of Clark's conviction upon his plea of nolo contendere for tax fraud relating to Gene Clark, Inc., for the fiscal years 1948 and 1949. It is clear that the evidence is admissible as reflecting upon Clark's credibility as a witness ( Lillian Kilpatrick, 22 T.C. 446 (1954), affirmed 227 F. (2d) 240 (C.A. 5)) but even in this respect, it is obvious from the record in the instant case that he is unworthy of belief without resorting to his conviction to bolster that view. Fraud - 1946 We think that the evidence of Files with respect to unrecorded and unreported sales and diversions of corporate funds by Clark (much of which Clark himself admits, but tries to avoid by untenable explanation) gives rise to the inference of fraud for the calendar 1946. While the amounts cannot be precisely calculated, it is clear that they were substantial, and that part of Clark's deficiency for calendar 1946 was attributable thereto. Since the corporate return for fiscal 1947 itself discloses earnings available for distribution, there appears to be no doubt that the diversions during the last eight months *222 of the calendar year 1946 represented, at least in part, constructive dividends to Clark which were not included in the separate returns filed by him and his wife on the community property basis. We recognize that the foregoing is based to some extent upon inference from circumstantial evidence. Needless to say, circumstantial evidence, if clear and convincing, is sufficient of itself to establish fraudulent understatements, particularly where taxpayer's failure to keep proper records makes it difficult to pin point particular items. We, nevertheless, think it helpful to discuss two specific items in 1946, the latter of which, in all events, affirmatively demonstrates the existence of fraudulent intent. The first is the Creed item. During the period from December 1945 to March 1946, before Gene Clark, Inc., was incorporated, Clark performed substantial plumbing work for Creed, a general contractor, for which Creed agreed to pay $2,922.50. A payment of $544 was made by Creed. which was deposited to the account of Gene Clark Plumbing Co. and recorded in the sales of that company. The balance of $2,378.50 was credited by Creed in June, 1946, to Clark personally, on account of the *223 purchase price of a house which Clark was buying from Creed. The credit was not reported in Clark's income tax return or in the return for Gene Clark, Inc. Gene Clark Plumbing Co. filed no return for 1946. Clark individually got the full benefit of the payment, which should have been included in the returns of himself and his wife on the community property basis. Whether the item of $2,378.50 is treated as a dividend (as respondent treated it) or as direct income to Clark properly received by Clark, or improperly appropriated by him for his own benefit, is here unimportant, since there were corporate earnings materially in excess of that amount available for distribution as disclosed by the corporate return for fiscal 1946. Clark received the benefit in 1946 but did not report his share of the income in his return. It is obvious that some part of the deficiency is due to the omission of this item. If the Creed item were considered as an isolated factor, we would be unwilling to hold that the failure to report it for income tax purposes was sufficient to establish fraud, since it might have been an oversight. When considered in the light of all of Clark's manipulations, and particularly *224 in the pattern of the Truman Johnson item, to be discussed next, we think it is of some significance as an identifiable link in the chain of events which resulted in the understatement of income. We turn then to the Johnson item. On October 5, 1946, Gene Clark, Inc., entered into a contract with Truman Johnson, a building contractor, to supply plumbing materials and services to Johnson on ten new houses. The transaction was handled in the following manner at Clark's request. The actual price for the materials and services was $9,300. In the written contract, however, the price was set up as $3,300. The difference of $6,000 was credited by Johnson to Gene Clark, Inc., as part payment on a house which the corporation purchased from Johnson in 1946. (The house was sold by the corporation to Clark in 1947). Johnson's books recorded the full cost of the materials and services furnished, including the $6,000. The $6,000 was neither recorded on the books of Gene Clark, Inc., nor reported on its income tax returns. Here Clark's intention to defraud was deliberate and obvious. While in the first instance, the fraud from the income tax standpoint affected the tax of the corporation, it *225 likewise had its effect upon the income and tax of Clark arising out of diversions from the corporation by Clark, which, to the extent of the actual diversions, and not to exceed available earnings, are to be treated as ordinary dividends. Whether or not Clark was familiar with all of the income tax accounting factors involved is not material. His intent was to defraud, both as to himself and the corporation, and he succeeded. On the basis of the foregoing discussion, we hold that Clark's individual income tax return for 1946 was false and fraudulent with the obvious intent to evade taxes, and that some part of his deficiency for 1946 (we are not concerned with how much, but the amount was undoubtedly substantial) was due to such fraud with intent to evade taxes. It follows that additions to tax under section 293(b) are to be applied for that year. Fraud - 1947 What we have said generally with respect to unrecorded sales of Gene Clark, Inc., diversions of corporate funds by Clark to himself, and failure to account therefor in his income tax return for 1946 applies equally to 1947. Again, however, we consider specific items. As set forth in greater detail in our Findings, Gene *226 Clark, Inc., in 1947, received three payments from Hamilton Homes, Inc., totalling $5,686. These payments were not recorded as sales on the books of the company. They were deposited in the bank account of the company, but such deposits merely substituted the Hamilton Homes, Inc., payments for payments from other customers whose payments were recorded on the books but not deposited. While Clark does not concede the particular substitution, he admits that substitutions were made from time to time. The sales per books, per returns, and the bank deposits, reconciled with each other and the only possible inference or explanation is that substitutions for unrecorded sales were made as above described. That at least a substantial part of the undeposited amounts went to Clark is obvious without repeating our analysis of the evidence. Here again, it is not significant on the fraud issue to place a label on the diversions. There were ample earnings of the company available for distribution as ordinary dividends. Thus, whether we treat the diversions as ordinary dividends or direct income to Clark, the result is the same. The income was not reported by Clark or his wife. Since we have covered *227 the H. K. Niles check of $1,000 in our Findings, and since the facts and inferences as to substitution is the same as discussed with respect to Hamilton Homes, Inc., we need only say that this is another specific item, a substantial part of which was income to Clark, unreported by him or his wife. On September 20, 1947, Clark received a check from Valley Cities Supply Co. for $2,731.54. It is stipulated that this check was not entered on the books of Gene Clark, Inc., or reported by the corporation, or by either Clark or his wife, for income tax purposes. On the basis of the foregoing, we hold that the income tax return of Gene Clark for 1947 was false and fraudulent, with intent to evade taxes, and that part of his deficiency for 1947 was due to fraud with intent to evade taxes. Accordingly, additions to tax under section 293(b) are to be applied. VII. Limitations We are concerned with the issue of the statute of limitations only with respect to the separate returns of Gene and Faye Clark for the calendar years 1946 and 1947. We take up the returns of Faye Clark first. Respondent concedes that her returns for these years were not false or fraudulent with intent to evade *228 taxes, but has not abandoned his alternative contention that the five-year period of limitations provided for in section 275(c) is applicable to the year 1947. On this issue, the respondent has the burden of proof. Lois Seltzer, 21 T.C. 398 (1952). With respect to the year 1946, we note that her return was filed on March 15, 1947, and that respondent's statutory notice of deficiency was mailed to her on February 20, 1953, more than five years later. No waiver of the statute of limitations has been filed with respect to 1946. It is thus apparent that the provisions of section 275(c) of the Internal Revenue Code of 1939 are not applicable, and since there was no fraud urged with respect to the return in question, assessment and collection of taxes are barred for 1946. For the calendar year 1947, Faye Clark's return was filed on March 15, 1948. The statutory notice of deficiency was transmitted to her on February 20, 1953, more than three but less than five years after the return was filed. Again, there was no waiver of limitations. Since it was conceded that there was no fraud, limitations will apply under section 275(c) unless she omitted from gross income an amount *229 properly includible therein in excess of 25 per cent of gross income stated in the return. The gross income stated in her return was $9,130.51, of which 25 per cent is $2,282.63. Since the application of section 275(c) is raised by respondent in his answer, the burden of proof is on him. He need not, however, establish a precise amount as long as it is apparent from the affirmative evidence that at least $2,282.63 (25 per cent of Faye's gross income per return) was omitted. We think respondent has clearly met the burden of proof. We need go no further on this issue than refer to the following facts. In Part VI of our Opinion, under the heading of "Fraud - 1947," we discussed the Hamilton Homes, Inc., and H. K. Niles substitutions in the respective amounts of $5,686 and $1,000. It is obvious that none of the checks making up these items were accommodation checks. We also discussed the Valley Cities Supply Co. check of $2,731.54 which was neither entered on the books of Gene Clark, Inc., nor reported by the corporation, Clark, or his wife. It is clear that at least 70 per cent of the total of these amounts constituted gross income diverted from the corporation by Clark, to be accounted *230 for by Clark and his wife on the community property basis in their separate returns for 1947. Again, for the reasons stated in discussing the fraud issue, it is not significant whether the items be deemed direct income to Clark and his wife, or constructive dividends. They represent gross income in any event, and one-half of Clark's share of each was includible, on the community property basis, in gross income on Faye's individual return for 1947. The amount so omitted from gross income on her return which should have been included therein was well in excess of $2,282.63, and the statute of limitations, therefore, is not a bar to assessment and collection as to Faye Clark for 1947. The question of intent on the part of Faye is not material to this issue. With respect to Gene Clark, we hold that the returns filed by him for 1946 and 1947 were false and fraudulent with intent to evade tax, and the statute of limitations does not bar assessment and collection of any deficiency for such years. (See discussion of fraud, supra.) It is, therefore, unnecessary to consider respondent's alternative contention that section 275(c) is applicable to the year 1947. If it were, we think it quite *231 evident from our discussion above relating to Faye Clark, that Gene likewise omitted an amount from gross income which was in excess of 25 per cent of the amount of gross income shown on his return, and that the bar of the statute of limitations accordingly would not apply. The parties have stipulated that the statute of limitations is not in issue for the years 1948 and 1949, and we have found no net understatement for those years. VIII. Jeopardy Assessments The record discloses that there have been certain jeopardy assessments and payments with respect thereto. It is understood that such assessments and payments will be taken into account administratively and there is no occasion for us to discuss or reflect them in our Opinion. Decisions will be entered under Rule 50. Footnotes
1. The instant case presents some issues similar to those involved in Archie M. Koyl, et al. v. Commissioner, Docket Nos. 48336, 48337, 48338, in which case Findings of Fact and Opinion are filed simultaneously herewith. The proceedings in the two cases have not been consolidated. It has been stipulated, however, that there shall be incorporated as evidence into the record in the instant case, so far as relevant, all of the testimony material herein given by revenue agent Donald E. Phillips, and exhibits relating thereto, in the Koyl case, supra. There is, however, specifically excluded from consideration in the instant proceeding the stipulations in the Koyl case relating to net income as adjusted, deficiencies and additions to tax for fraud of Gene Clark, Inc., for the fiscal years 1947 through 1950, inclusive, since the petitioners herein were not parties to said stipulations and petitioners' objection to their use has been sustained. What otherwise would appear to be inconsistent results stem from the material differences in the records of the respective cases as presented to us, including differing stipulations of fact.↩
2. Although the parties repeatedly refer to the date of incorporation as May 1, 1946, the record shows that the official date of incorporation was April 23, 1946.↩
3. Including shares of Fawn Koyl.↩
4. The additions to net income and the total net income here listed were predicated upon the computations contained in a report prepared by respondent's agent during the investigation of the income tax liability of Gene Clark, Inc., which report (discussed infra) was received in evidence by stipulation of the parties for the purpose of explaining the basis of respondent's ultimate determination. but not as evidence of the facts contained therein.↩